JOHN C. CRUDEN
Acting Assistant Attorney General
ROMNEY S. PHILPOTT, Trial Attorney
Natural Resources Section
Environment & Natural Resources Division
United States Department of Justice
P.O. Box 663
Washington, D.C. 20044-0663
Telephone: (202) 305-0258

BRETT L. TOLMAN, United States Attorney (#8821)
JOHN K. MANGUM, Assistant United States Attorney (#2072)
185 South State Street, Suite 300
Salt Lake City, UT  84111
(801) 524-5682

Attorneys for Defendant United States of America

---

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH - CENTRAL DIVISION

---

| | | |
|---|---|---|
| KANE COUNTY, UTAH,<br>a Utah political subdivision,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil No. 2:08-CV-00315-CW<br><br>MEMORANDUM IN SUPPORT OF<br>RENEWED MOTION FOR PARTIAL<br>DISMISSAL<br><br>Judge Clark Waddoups |

---

# **TABLE OF CONTENTS**

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A. R.S. 2477 and Its Relevant Legal History . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    B. Previous Proceedings in this Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    C. Background for Kane County's Claims as to the Hancock, Sand Dune and Skutumpah Roads . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    D. Kane County's Additional Allegations for the Skutumpah Road . . . . . . . . . . . 12

    E. Background for Kane County's Claims as to Tenny Creek and Oak Canyon Roads . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

    1. Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

    2. This Court Does Not Have Subject Matter Jurisdiction to Adjudicate Plaintiff's Claims regarding Roads for which there is No Case or Controversy. . . . . . . . . . 18

    3. Under the Quiet Title Act, the United States has not Waived its Sovereign Immunity for Claims regarding Roads for which there is no Present Dispute as to Title. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

## TABLE OF AUTHORITIES

**CASES**

Alaska v. United States,
    201 F.3d 1154 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28-29

Bateman v. City of W. Bountiful,
    89 F.3d 704 (10th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Bd. of County Com'rs County of La Plata, Colo. v. Brown Group Retail, Inc.,
    No. 08-cv-00855-LTB-KMT, 2008 WL 4527736, (D. Colo. Oct. 3, 2008) . . . . . . . . . . 18

Brocksopp Eng., Inc. v. Bach-Simpson Ltd.,
    136 F.R.D. 485 (E.D. Wis. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Cox v. Phelps Dodge Corp.,
    43 F.3d 1345 (10th Cir.1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

F.T.C. v. Kuykendall,
    466 F.3d 1149 (10th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Garcia v. Bd. of Educ. of Albuquerque Pub. Sch.,
    520 F.3d 1116 (10th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Ginsberg v. United States,
    707 F.2d 91 (4th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Gladstone Realtors v. Vill. of Bellwood,
    441 U.S. 91 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Harrell v. United States,
    443 F.3d 1231 (10th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

In re Kane County, Utah,
    No. 2:08-MC-156, 2008 WL 3833803, (D. Utah Aug. 13, 2008) . . . . . . . . . . . . . . . . 21

Lesnoi, Inc. v. United States,
    170 F.3d 1188 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Lewis v. Continental Bank Corp.,
    494 U.S. 472 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Lindstrom v. United States,
    510 F.3d 1191 (10th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

McClendon v. City of Albuquerque,
    100 F.3d 863 (10th Cir.1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

McFarland v. Kempthorne,
    545 F.3d 1106 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Paper, Allied-Indus., Chem. & Energy Workers Int'l. Union v. Cont'l Carbon Co.,
    428 F.3d 1285 (10th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   18, 19

Soriano v. United States,
    352 U.S. 270, 77 S.Ct. 269 (1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

S. Utah Wilderness Alliance v. Bureau of Land Mgmt.,
    425 F.3d 735 (10th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 13, 14, 22, 26

Southway v. Cent. Bank of Nigeria,
    328 F.3d 1267 (10th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Sw. Four Wheel Drive Assoc. v. Bureau of Land Mgmt.,
    363 F.3d 1069 (10th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28, 29

The Wilderness Soc'y v. Kane County,
    470 F. Supp. 2d 1300 (D. Utah 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 23

The Wilderness Soc'y v. Kane County,
    560 F. Supp. 2d 1147 (D. Utah 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

The Wilderness Soc'y v Kane County,
    No. 2:05-CV-854-TC, 2008 WL 2421163, (D. Utah June 13, 2008) . . . . . . . . . . . . 8, 21

U.S. Synthetic Corp. v. ReedHycalog, Ltd.,
    407 F. Supp. 2d 1274 (D. Utah 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Unified Sch. Dist. No. 259, Sedgwick County, Kan. v. Disability Rights Ctr. of Kan.,
    491 F.3d 1143 (10th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

United States v. Jenks,
    22 F.3d 1513 (10th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

United States v. Spectrum Emergency Care.,

190 F.3d 1156 (10th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

United States v. Watashe,
102 F.2d 428 (10th Cir. 1939) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Washington County v. United States,
903 F. Supp. 40 (D. Utah 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 22, 26, 27

## **STATUTES**

28 U.S.C. § 2409a . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 2409a(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26, 28

Federal Land Policy and Management Act of 1976, Pub.L. No. 94-579 § 701(a), 90 Stat. 2743
(1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

## **RULES**

Fed. R. Civ. P. 12(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 18

Defendant United States of America (hereinafter "Defendant" or "United States"), hereby moves the Court to dismiss certain of plaintiff Kane County's (hereinafter "Plaintiff," "Kane County" or "the County") claims under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction.  As grounds therefore, Defendant states as follows:

## INTRODUCTION

In this action, brought under the Quiet Title Act ("QTA"), 28 U.S.C. § 2409a, Kane County seeks to quiet title in alleged rights-of-way on fifteen claimed roads that traverse federal public land managed by the United States Bureau of Land Management ("BLM").  On December 6, 2008, Defendant filed a motion for partial dismissal, asserting that Kane County could not demonstrate a legally cognizable controversy between the parties for purposes of establishing subject matter jurisdiction regarding six of the claimed roads, namely the Oak Canyon, Old Leach Ranch, Tenny Creek, Hancock, Sand Dune, and Skutumpah roads.  The day before its response brief was due, the County filed a motion seeking permission to amend its complaint.

The Court granted Kane County's motion; however, its new "First Amended Complaint" still does not contain cognizable allegations that suffice to demonstrate that subject matter jurisdiction is present for five of the six roads, namely the Hancock, Sand Dune, Skutumpah, Oak Canyon, and Tenny Creek roads (hereinafter the "five roads").[1/]  Specifically, the County still makes no supportable allegations that the United States has interfered with, or denied the existence of, County rights-of-way with respect to the five roads.  The primary additional basis for a case or controversy alleged by Kane County in its First Amended Complaint is that BLM's

_____

[1/]      As discussed in more detail below, the United States does not presently seek dismissal of Kane County's claim relating to the Old Leach Ranch route in this motion.

1

Kanab Field Office, by issuing a Resource Management Plan ("RMP"), has closed and/or improperly regulated the five roads. However, the plan does not do so by its terms and Kane County's allegation is based on a strained reading of the plan–much like its strained reading of a previous decision from this court upon which it previously relied (and continues to rely) for its allegations of case or controversy.

As a result, Kane County still can point to no case or controversy nor a dispute as to title relating to these roads, as required for the Court's jurisdiction under Article III of the U.S. Constitution and the QTA respectively. Accordingly, Kane County has failed to carry its burden to establish the Court's subject matter jurisdiction over Kane County's claims as to the five roads, and the claims should be dismissed.

## STATEMENT OF FACTS

### A.    R.S. 2477 and Its Relevant Legal History

 Kane County asserts in this lawsuit that it holds public highway rights-of-way on fifteen claimed roads traversing federal public land that it obtained pursuant to Revised Statute 2477 (hereinafter, "R.S. 2477"). Before it was repealed, R.S. 2477 authorized the construction of public highways over unreserved, federal public lands:

> In 1866, Congress passed an open-ended grant of "the right of way for the construction of highways over public lands, not reserved for public uses." . . . This statute, commonly called "R.S. 2477," remained in effect for 110 years, and most of the transportation routes of the West were established under its authority.

*S. Utah Wilderness Alliance v. Bureau of Land Mgmt.* (hereinafter "*SUWA*"), 425 F.3d 735, 740 (10th Cir. 2005) (internal citations omitted). In 1976, Congress enacted the Federal Land Policy and Management Act of 1976 ("FLPMA"), which, among other things, repealed R.S. 2477. *Id.*

2

However, FLPMA preserved previously-established rights-of-way, specifying that any "valid" R.S. 2477 rights-of-way "existing on the date of enactment would continue in effect." *Id*. at 741 (*citing* Pub.L. No. 94-579 § 701(a), 90 Stat. 2743, 2786 (1976)).

In *SUWA*, the Tenth Circuit addressed several issues relevant to R.S. 2477 claims, and, among other things, recognized that such "valid" R.S. 2477 rights-of-way vested automatically, without need for any formal action or official records documenting their establishment. *Id.* at 754 ("[a]ll that is required [for title to an R.S. 2477 right of way to pass to a grantee] . . . are acts on the part of the grantee sufficient to manifest an intent to accept the congressional offer"). The court also described a consultation process that the holder of an R.S. 2477 right-of-way must initiate with the relevant federal land manager when the holder wishes to make road improvements.[2]/ *Id.* at 748. As part of this process, the federal land manager is to make an initial determination of whether the proposed improvements are within the scope of the right-of-way. *Id.*

In March 2006, the Secretary of the Interior issued a memorandum adopting the reasoning of the *SUWA* decision, and clarifying how the Department of the Interior's agencies should address R.S. 2477 claims. (*See* March 22, 2006 Memorandum, [hereinafter, "Norton Memorandum"], attached hereto as Ex. A.) The Norton Memorandum recognized several alternatives available for Departmental land managers and right-of-way claimants to address claimed rights-of-way, including the ability of bureaus (such as BLM) to make informal,

_____

[2]/     The Tenth Circuit expressly provided that such consultation need not be undertaken for "routine maintenance," as opposed to the construction of road improvements, and provided explicit guidance for delineating between the two. *SUWA*, 425 F.3d at 748-49.

nonbinding administrative validity determinations ("NBDs") regarding such claims.  Unless and until it is superceded, the Norton Memorandum describes the official position of the Interior Department relating to the recognition of R.S. 2477 rights-of-way on federal land managed by the Department.

Pursuant to the Norton Memorandum, BLM has issued Instruction Memoranda describing BLM's procedures for processing such discretionary, non-binding determinations, and consulting with holders of R.S. 2477 rights-of-way concerning proposed road improvements. (Declaration of Michael Dekeyrel, [hereinafter "Dekeyrel Decl."], ¶ 2, attached hereto as Exhibit B; Consultation Process on Proposed Improvements to Revised Statute (R.S.) 2477 Rights-of-Way, Instruction Memorandum No. 2008-175 [hereinafter "IM 2008-175"], (Aug. 30, 2008), attached hereto as Exhibit C.)

Apart from this lawsuit, Kane County has asserted that it holds R.S. 2477 rights-of-way for more than a hundred roads crossing federal public land within its borders.  (Declaration of James Karkut, [hereinafter "Karkut Decl."], ¶ 4, attached hereto as Exhibit D; Excerpt from August 30, 1999 Kane County Objections to the Grand Staircase/Escalante National Monument Proposed Management Plan, attached hereto as Exhibit E.)  It has chosen, by filing this action, to seek to quiet title to its asserted R.S. 2477 rights-of-way to fifteen of these claimed roads.  (*See generally* First Am. Compl.)  However, for the Hancock, Sand Dune, Skutumpah, Tenny Creek, and Oak Canyon roads, Kane County cannot demonstrate that a case or controversy exists, or that there is a present dispute over title for purposes of the QTA.

### B.   Previous Proceedings in this Case

As discussed in greater detail below, Kane County initiated this case on April 25, 2008,

asserting claims regarding five claimed roads in western Kane County: the Bald Knoll, Mill

Creek, Oak Creek, Old Leach Ranch, and Tenny Creek roads.[3]  On September 24, 2008, (which

was the deadline to amend the pleadings under the Court's August 15, 2008 Scheduling Order,

Doc. No. 13), Kane County moved for leave to file an amended complaint, which motion was

granted on October 30, 2008.  (Doc. No. 16.).  In its Amended Complaint, filed November 10,

2008 (Doc. No. 24), Kane County asserted claims as to an additional ten roads.  On December 5,

2008, Defendant filed a motion for partial dismissal, arguing that Kane County had failed to

demonstrate a case or controversy under Article III, nor a dispute as to real property, necessary

to waive sovereign immunity under the QTA, for its claims regarding six of the claimed roads.

Specifically, Defendant argued Plaintiff was unable to point to any dispute regarding the Tenny

Creek, Oak Canyon, and Old Leach Ranch routes, because the Amended Complaint contained no

allegations specific to these claimed roads demonstrating a dispute as to whether Kane County

held R.S. 2477 rights-of-way relating to them.  Defendant also argued that there was no

cognizable dispute regarding the Hancock, Sand Dune, and Skutumpah roads, because Kane

County's only allegation supporting a dispute regarding these roads was an allegation that a

representative of the Department of the Interior had stated, at a meeting between various County,

State of Utah, and federal attorneys, that Kane County did not own any rights-of-way.

Defendant provided a sworn declaration from James Karkut, who was the alleged "representative

of the Department of the Interior" referred to in the Amended Complaint, expressly denying that

---

[3]        Some of the claimed roads in this action are better characterized, at best, as "two tracks"
or "routes" rather than "roads" in the ordinary usage of that word.  Because Kane County refers
to them as roads, Defendant does so also for purposes of convenience, but by doing so,
Defendant does not concede that such claimed routes are in fact "roads."

he had made the statement in question.

On January 6, 2009, the day before the County's response to the motion for partial dismissal was due, the County filed a motion seeking permission to file its "First Amended Complaint," which the Court granted.  The First Amended Complaint contains additional allegations purporting to support subject matter jurisdiction, including, among others, that (1) a Resource Management Plan ("RMP") issued on October 31, 2008 by BLM's Kanab Field Office purported to close certain of the roads; (2) that if the RMP did not close these roads, it unlawfully regulates travel on these routes; and (3) that unidentified representatives of the Department of the Interior made statements indicating that Kane County does not now have an R.S. 2477 right-of-way for the Skutumpah road.  (First Am. Compl., ¶¶ 77, 85-87; 93-94.)

### C.   Background for Kane County's Claims as to the Hancock, Sand Dune and Skutumpah Roads

Kane County's claims that a case or controversy relating to its claimed rights-of-way on the Hancock, Sand Dune and Skutumpah roads arise from the following circumstances.  On May 18, 2008, this court, in litigation between several environmental groups and Kane County, granted summary judgment for the environmental groups, finding that Kane County had acted unlawfully under the Supremacy Clause by purporting to open roads on federal public land in Kane County to off-road vehicle use when such roads were closed to off-road vehicle or motor vehicle use under an applicable federal land management plan.  *The Wilderness Society v. Kane County, Utah*, 560 F. Supp. 2d 1147, 1149, 1156 (D. Utah 2008) [hereinafter, "*TWS*"].  The County had defended the claims in part by arguing that it had R.S. 2477 rights-of-way for the roads at issue.  *Id.* at 1160.  The court found–"for purposes of analysis in this case"–that Kane

County could not rely on claimed rights-of-way that had not been established in a court of law.
*Id.* The court entered an order (the "*TWS* order") requiring Kane County to remove "those County road signs that conflict with federal land management plans or federal law as identified in this Order" and enjoining the County from "adopt[ing] ordinances, post[ing] signs, or otherwise purport[ing] to manage or open to vehicle use any route or area <u>closed to such use</u> by governing federal land management plan or federal law." *Id.* at 1166 (emphasis added). Kane County has appealed the *TWS* court's decision. (*See* First Am. Compl., ¶ 81 n.1.)

On May 19, 2008, Kane County sent BLM a letter claiming that the *TWS* order (and an earlier order denying the County's motion to dismiss)[4]/ "effectively temporarily eject[] Kane County and the State of Utah from ownership and jurisdiction of roads across federal lands not adjudicated in favor of the County and the State." (May 19, 2008 Letter, attached hereto as Ex. F, at 1.) Kane County further claimed, without explanation, that "[t]he Court's injunctive order restricts Kane County's ability to manage and maintain its historic but unadjudicated roads across federally managed lands whether they are open or closed under provisions of federal planning." (*Id.*) Kane County asserted that unless the injunctive order was stayed, the County would be "denied jurisdiction, authority, and responsibility to perform maintenance and regulatory functions on roads across federally managed lands until rights-of-ways along the roads are favorably adjudicated to the County and the State." (*Id.*, at 2.)

Advancing this same argument, Kane County sought from the *TWS* court a stay of the injunction pending appeal. The *TWS* court denied the County's motion on June 13, 2008,

---

[4]/     *See The Wilderness Society v. Kane County*, 470 F. Supp. 2d 1300 (D. Utah 2006).

expressly informing the County that it had misinterpreted the court's order, and stating:

> To the extent the language needs clarifying, the court emphasizes here that it has enjoined any County action that purports to manage or open to vehicle use *any route or area closed to such use by governing federal land management plan or federal law absent a court-validated right-of-way*. That is, the court's order only applies to actions that directly conflict with federal closures and federal limitations on modes and methods of transportation on routes within federal land.

*The Wilderness Society v. Kane County*, No. 2:05-CV-854-TC, 2008 WL 2421163, at * 1 (D. Utah June 13, 2008) (emphasis in original). Nonetheless, on June 23, 2008, Kane County sent another letter to BLM, stating that because the court had rejected its request for a stay, the *TWS* order "is now in effect and the County must abide by the ruling." (June 23, 2008 Letter, attached hereto as Ex. G.) In that letter, Kane County again advanced its overbroad interpretation of the *TWS* order, claiming that "the Court's Order and previous ruling removed the legal authority for Kane County's jurisdiction and responsibility for roads across federally managed lands." (*Id.*, at 1.) The County therefore announced that:

> This letter is <u>notification</u> that the County will abide by the Court's Order of May 16th and the precedent established by the Court's ruling of August 24, 2006. Effective June 23, 2008, Kane County will cease all use, occupancy, or development on any portion of the public lands pending the outcome of the appeal or resolution of Kane County's jurisdiction. Specifically, the County will immediately remove, at a minimum, the forty signs referenced in the Order. The County will cease construction, maintenance, and repair activities on roads across federally managed lands except where it secures authority and jurisdiction under the law.

(*Id.*, at 2) (emphasis in original).

On July 30, 2008, a meeting was held at the U.S. Attorney's office ("USAO") in Salt Lake City, among attorneys on behalf of the USAO, the Department of the Interior's Regional Solicitor's office, the State of Utah, the Utah Association of Counties ("UAC"), and Kane County. (*See* Karkut Decl., ¶ 5; Sept. 29, 2008 email, attached hereto as Exhibit H.) The

meeting was convened at the request of UAC's counsel, who asked to meet with representatives of the USAO to propose that the United States file an amicus brief in support of the County's appeal of the *TWS* decision.  (Karkut Decl., ¶ 5.)  The federal government attorneys included several members of the USAO, as well as James Karkut, an "attorney-advisor" (i.e., staff attorney) employed with the Salt Lake City Office of the Regional Solicitor, Department of the Interior.  (Karkut Decl., ¶ 5.)  Contrary to allegations in the County's Amended Complaint (and in its First Amended Complaint), Mr. Karkut never made any statement that: (1) Kane County has no R.S. 2477 rights-of-way, in general, or specific to the roads at issue in this case; or (2) it was the Department of Interior's position that Kane County has no R.S. 2477 rights-of-way, in general, or specific to the roads at issue in this case.  (Karkut Decl., ¶ 6.)  Further, regardless of Kane County's allegations, Mr. Karkut, as an attorney-advisor, did not have the authority to make a decision on behalf of the Department of the Interior or BLM to deny the existence of any of Kane County's claimed rights-of-way.  *Id.*

On September 24, 2008, (which was the deadline to amend the pleadings under the Court's August 15, 2008 Scheduling Order, Doc. No. 13), Kane County moved for leave to file an amended complaint, which motion was granted on October 30, 2008.  (Doc. No. 16.).  In its Motion and Amended Complaint, the County asserted that its ability to maintain and manage its roads as public highways had been impaired by (1) the *TWS* court's "holding" that Kane County does not own an R.S. 2477 right-of-way unless and until it is adjudicated in a court of law; and (2) the Department of the Interior's adoption of this holding and statement that Kane County has no R.S. 2477 rights-of-way, as communicated to Kane County at the July 30th meeting.  (Br. Supp. Mot. Am., Doc. No. 16, at 2-3.  *See also* Am. Compl., ¶¶ 80-83.)

Now, in its First Amended Complaint, Kane County alleges, as an additional basis for subject matter jurisdiction over the Hancock, Sand Dune, and Skutumpah roads, that on October 31, 2008, the BLM adopted its RMP for the public lands managed by BLM's Kanab Field Office in Kane County.  (First Am. Compl., ¶ 93.)  According to Kane County, the RMP is inconsistent with its claimed rights on these roads (as well as other roads in this litigation) because it purports to regulate and close these roads.  (First Am. Compl., ¶ 96.)

The RMP addresses, among other things, transportation planning within the area managed by the Kanab Field Office (which area includes those lands traversed by the claimed Sand Dune, Hancock, Bald Knoll, Mill Creek, Tenny Creek, Oak Canyon, Old Leach Ranch, Cave Lakes, and portions of the Skutumpah routes.  (Declaration of Harry Barber, [hereinafter "Barber Decl."], attached hereto as Exhibit I, ¶ 3.)  Copies of the relevant sections of the RMP are attached hereto as Exhibit J.[5/]  In preparing the RMP, BLM attempted to inventory the routes traversing the federal land managed by the Kanab Field Office.  This inventory did not include all roads traversing the land managed by the Kanab Field Office; in particular, BLM did not include in the inventory Class 3 primary roads, including the Hancock, Sand Dune, and Skutumpah roads.  (Barber Decl, ¶5.)  The inventory did not include such roads because it was obvious that these roads were well-used, major routes.  *Id.*

Under the RMP, BLM divided the inventoried routes into three management categories: (1) routes that are "open" to motorized vehicle use; (2) routes on which motor vehicle use is

_____

[5/]      The entire RMP, as well as draft versions and supporting documentation, are publicly available on BLM's website, at
http://www.blm.gov/ut/st/en/fo/kanab/planning/rod_approved_rmp.html

"limited" (i.e., the routes are closed seasonally); and (3) routes that are "closed" to motorized

vehicle use. The RMP illustrated its designation of the inventoried routes in a letter-paper-size

"Map 10," attached as an addendum to the RMP.  (*See* Ex. J.)  Map 10 shows routes that are

"open" in green, routes that are "closed" in red, and routes that are "limited" in pink.  *See id.*

Because they were not inventoried routes, Map 10 does not show the Hancock, Sand Dune or

Skutumpah roads as "closed;" in fact, Map 10 does not show them at all.  *Id.*  By not including

these routes, BLM did not purport to close these roads, and BLM took no action on the ground or

otherwise that would act to close these roads.  (Barber Decl., ¶ 6.)

As part of the planning process, in October 2007, BLM published a proposed RMP,

which contained four alternative route designation maps (similar to the final Map 10).  (Barber

Decl., ¶ 7.)  None of the route four alternative route designation maps showed the Hancock, Sand

Dune, or Skutumpah roads.  *Id.*  BLM invited public comment on the proposed RMP, and Kane

County provided BLM with comments.  (*See* Kane County Comments, attached hereto as Ex. R.)

An attachment to Kane County's comments recognized that the Hancock and Sand Dune roads

were not on the RMP's maps, yet Kane County made no assertion in its comments that the RMP

would act to close any of these routes.  *Id.*

After issuance of the RMP, and pursuant to the transportation plan implementation

process described in Appendix 7 of the RMP, BLM issued a series of fourteen official maps,

each approximately 11" x 17", showing the roads traversing the land covered by the RMP in

much greater detail than on Map 10 and incorporating the RMP's route designations, to better

and more clearly illustrate on a larger scale for public benefit the information shown in the

relatively small Map 10.  These maps were all published on the web page of the Utah BLM's

Kanab Field Office on approximately January 30, 2009.  One of these maps, the "Kanab West" map, attached hereto as Exhibit K, covers the areas traversed by the Hancock and Sand Dune roads.  The map shows the Hancock and Sand Dune roads as open Class 3 primary roads.  *Id.* Similarly, the "Skutumpah" map, attached hereto as Exhibit L, shows the Skutumpah as an open, Class 3 Primary road for those lands covered by the RMP.

Other than the designations of "open," "closed," and "limited," the RMP does not regulate the use of any of the routes traversing the federal land it governs.  It does not impose restrictions on the use of the Hancock, Sand Dune or Skutumpah roads (nor any of the other roads at issue in this litigation).  (*See* RMP.)

### D.    Kane County's Additional Allegations for the Skutumpah Road

Kane County makes additional jurisdictional allegations with specific regard to the Skutumpah road.  Kane County argues that this court, in *TWS*, effectively determined that "Kane County does not own an R.S. 2477 right-of-way for the Skutumpah road."  It further asserts that BLM's Final Management Plan for the Grand Staircase-Escalante National Monument (hereinafter "MMP") "purports to restrict Kane County's regulation, use and maintenance of the Skutumpah road within the Monument."  (First Am. Compl., ¶ 15.)[6]  The MMP, adopted by BLM in 2000, incorporates a transportation map, "Map 2," which identifies roads that are open for motorized vehicle use.  (*See* Excerpts of MMP, attached hereto as Exhibit M.)[7]  The MMP

---

[6]      The Skutumpah road traverses federal public land managed both by BLM's Kanab Field Office (as discussed above), and the BLM's Monument office.

[7]      The complete MMP can be accessed at BLM's website at http://www.blm.gov/ut/st/en/fo/grand_staircase-escalante/planning/monument_management.html

provides, in Map 2, that several limited segments of the road are "open to street-legal vehicles only." It also provides that "open routes may be maintained within the disturbed travel surface as of the date of this plan; no widening, passing lanes, or other travel surface upgrades could occur." MMP, at Tran-7. The MMP provides exceptions for portions of the Skutumpah road, providing that it allows "new crossing for safety at Bull Valley Gorge, and stabilization of washout prone areas, primarily along the northern section, to prevent erosion and sediment loading in drainages." *Id.* Kane County provides no allegations as to how these provisions conflict with the scope of the County's putative rights-of-way. (*See* First Am. Compl.)

Finally, Kane County makes vague allegations that "since 2005, representatives of the Department of Interior provided assistance to the plaintiffs in the TWS Decision and have stated that Kane County does not now have an R.S. 2477 right-of-way for the Skutumpah road . . ." (First Am. Compl., ¶ 87.) Specifically, Kane County alleges that Interior representatives have said that the Tenth Circuit was wrong in *SUWA v. BLM*, 425 F.3d 735 (10th Cir. 2005) to suggest that Kane County owns such a right-of-way; that Kane County's historic maintenance activities on the road were not conducted pursuant to its ownership of a right-of-way, and that Kane County must first quiet title to the right-of-way to complain of federal restrictions on the road. *Id.* Plaintiff does not allege who made these statements, or in what context.

### E.   Background for Kane County's Claims as to Tenny Creek and Oak Canyon Roads

Kane County's claims regarding the Tenny Creek and Oak Canyon roads arise from the following circumstances. By letter dated June 16, 2006, Kane County provided comments to BLM on a draft Environmental Assessment BLM had prepared in conjunction with a proposed

minerals material sale on federal public land in Kane County.  (*See* June 16, 2006 letter, attached hereto as Exhibit N.)  Kane County's comments addressed only the so-called Bald Knoll road, a backcountry route located in the vicinity of the proposed site.  In particular, Kane County objected that BLM was proposing to"[b]lock or reclaim" a portion of Bald Knoll road, and to authorize a third party to make certain improvements to the road.  (*Id.*, at 1-2.)  Kane County asserted that it held a R.S. 2477 right-of-way on the Bald Knoll road, and that BLM's proposed actions were inconsistent with the existence of that right.  Kane County further advised BLM that the County intended to make certain improvements to the road, and consequently, it was seeking an "initial determination" from BLM as to whether its proposed improvements were within the scope of the right-of-way, in accordance with the procedures outlined in *SUWA* and the Norton Memorandum.

By letter dated August 9, 2006, Kane County informed BLM that it also sought to undertake improvements to another road in the vicinity of the proposed mining site, the Mill Creek road.  (*See* Aug. 9, 2006 letter, attached hereto as Exhibit O.)  The County attached to its letter a report from an engineering firm outlining the County's proposed immediate and future improvements to both the Mill Creek and Bald Knoll roads.  (*See id.*, at 12 & attachment thereto.)  Pursuant to its applicable Instruction Memoranda (IM 2006-159), BLM initiated its NBD process to make an informal determination whether Kane County held an R.S. 2477 right-of-way for the Bald Knoll road, intending to do the same for the Mill Creek road after it finished the process for the Bald Knoll road.  (Dekeyrel Decl., ¶ 3.)

In July 2007, BLM issued a preliminary NBD on the Bald Knoll road, preliminarily determining that, based on its review of information in its files and obtained from the County and

other entities, Kane County does hold an R.S. 2477 right-of-way for the road.  BLM also invited

public comment on its preliminary determination.  (Dekeyrel Decl., ¶ 4.)  On October 30, 2007,

BLM received comments, consisting of a 68-page letter with 49 exhibits, from several

environmental groups urging BLM to not recognize the right-of-way.  (Dekeyrel Decl., ¶ 5.)  On

December 31, 2007, Kane County responded to the comments by providing BLM with a 20-page

letter with additional exhibits, and on May 27, 2008, the environmental groups provided

supplemental comments in a 27-page letter to BLM. (Dekeyrel Decl., ¶ 5.)

Subsequently, on April 25, 2008, Kane County filed its initial complaint in this lawsuit,

alleging that BLM had not timely provided its determination whether the proposed

improvements on the Bald Knoll and Mill Creek roads were within the scope of Kane County's

alleged rights-of-way, and asserting two claims seeking to quiet title to the rights-of-way.  (*See*

*generally* Compl., Docket No. 1.)  Kane County expressly alleged (and has continued to allege in

its Amended and First Amended Complaint) that a case and controversy has arisen due to BLM's

delay in responding to the County's requests to improve the Mill Creek and Bald Knoll roads.

(*See* First Am. Compl., ¶ 79.)[8]/

The Mill Creek road claim also encompasses two separate claimed roads that were not

the subject of Kane County's consultation and road improvement requests.  Specifically, in its

First Cause of Action, Kane County also seeks to quiet title to alleged rights-of-way on the

Tenny Creek and the Oak Canyon roads, two short claimed roads that intersect the Mill Creek

---

[8]/      For purposes of this motion for partial dismissal, the United States reserves its position
concerning the existence *vel non* of subject matter jurisdiction over Kane County's claims with
respect to the Bald Knoll and Mill Creek roads.

road near its northern terminus, well beyond the northernmost point of any county-proposed improvement to the Mill Creek road.  (*See* First Am. Compl., ¶ 122c & d).[9]/  In addition to having distinct common names, each of these roads has also been designated by Kane County with separate road numbers.  Specifically, the County has designated the Mill Creek road as K4400, the Tenny Creek road as K4410, and the Oak Canyon road as K4405.  (*See id.*)  The State of Utah also appears to recognize these routes as separate roads.  (See Exhibit P, a page from a Utah State government website listing claimed R.S. 2477 rights-of-way, and separately listing these roads).

Neither Kane County nor BLM referenced any roads other than the Bald Knoll and Mill Creek roads in their relevant correspondence and documentation relating to the proposed road improvements. (Dekeyrel Decl., ¶ 6.)  Instead, Kane County's proposals for road improvements were limited to the Mill Creek and Bald Knoll roads, not the Tenny Creek or Oak Canyon roads.  (*See* First Am. Compl, ¶ 65, and Ex. 9 thereto, at pp. 8-9; Ex. O, attachment thereto.)  Thus, Kane County does not allege that BLM has made any determination of whether Kane County has R.S. 2477 rights-of-way relating to the Oak Canyon or Tenny Creek roads, or that the County has asked it to do so.[10]/

---

[9]/      As demonstrated by the County's Exhibit 1A, the Tenny Creek and Oak Canyon roads intersect the Mill Creek road over a mile to the north and north-northwest respectively of the intersection of the Bald Knoll and Mill Creek roads.  (*See* First Am. Compl., Ex. 1A.)

[10]/     In its previous motion for partial dismissal, the United States relied on similar circumstances to seek the dismissal of Kane County's claims relating to the Old Leach Ranch route (a 0.3 mile long, obscure route that intersects the claimed Bald Knoll road near its southern terminus), which Kane County includes in its second claim, relating to the Bald Knoll road. However, the route is not shown as an open route on the Skutumpah 11 x 17 travel map.  This motion therefore does not presently seek dismissal of Kane County's claim as to the Old Leach

In its First Amended Complaint, Kane County may also be claiming an additional basis for jurisdiction by alleging that the RMP purports to (1) regulate and (2) close the Tenny Creek and Oak Canyon roads.  (*See* First Am. Compl., ¶ 79) ("The BLM's purported regulation and closure of Kane County's Bald Knoll and Mill Creek roads [the latter of which Kane County describes to include the Tenny Creek and Oak Canyon roads] creates a case or controversy").  In fact, Map 10 and the Kanab West maps show the roads as open.  (*See* Exs. J & K.).

## ARGUMENT

This Court does not have subject matter jurisdiction over Kane County's First Cause of Action (to the extent it seeks determinations with regards to the Tenny Creek and Oak Canyon roads), nor its Third, Fourth, and Fifth Causes of Action (regarding Skutumpah, Sand Dune, and Hancock roads, respectively).[11]/  Specifically, the First Amended Complaint contains no

---

Ranch route.

[11]/     The remaining causes of action, which are not subject to this motion for partial dismissal, are as follows: First Cause of Action, seeking a determination with regard to the claimed Bald Knoll and Old Leach Ranch routes; Second Cause of Action, to the extent it seeks a determination with regards to the claimed Mill Creek route;  Sixth Cause of Action, seeking a determination with regards to the claimed Swallow Park/Park Wash route; Seventh Cause of Action, seeking a determination with regards to the claimed North Swag route; Eighth Cause of Action, seeking a determination with regards to the claimed Nipple Lake route; and Ninth Cause of Action, seeking a determination with regards to the four claimed Cave Lakes routes.  (*See generally* First Am. Compl.)  In addition, while not all of the County's Causes of Action are subject to this motion, the United States has not filed an Answer to the First Amended Complaint, particularly given the overlapping allegations among all of the claims and the possibility a ruling on this motion will result in a second amended complaint being filed.  *See also Brocksopp Eng'g, Inc. v. Bach-Simpson Ltd.*, 136 F.R.D. 485, 486 (E.D. Wis. 1991) (Rule 12(a) of the federal rules provides that the service of a 12(b) motion, whether or not it goes to all the claims in a complaint, enlarges the time for answering the remaining portions of the pleading); *Bd. of County Comm'rs County of La Plata, Colo. v. Brown Group Retail, Inc.,* No. 08-cv-00855-LTB-KMT, 2008 WL 4527736, at *1 (D. Colo. Oct. 3, 2008) (citing cases in accord with *Brocksopp*).

supportable allegations that the United States has previously denied the existence of, or interfered with, Kane County's putative R.S. 2477 rights-of-way on any of these five claimed roads.  As a result, Kane County's claims regarding the five roads must be dismissed because there is no case or controversy sufficient to provide jurisdiction under Article III of the United States Constitution, and additionally, there presently exists no disputed title to real property sufficient to create a waiver of the United States' sovereign immunity under the QTA.

**1.      Standard of Review**

Motions to dismiss for lack of subject matter are properly brought under Rule 12(b)(1) of the Federal Rules of Civil Procedure.  *See* Fed. R. Civ. P. 12(b)(1).  *See also Bateman v. City of West Bountiful,* 89 F.3d 704, 706 (10th Cir. 1996).  "When determining a motion to dismiss under Rule 12(b)(1), the court may consider not only the complaint itself, but also affidavits, deposition testimony, and other materials outside the complaint."  *U.S. Synthetic Corp. v. ReedHycalog, Ltd.*, 407 F. Supp. 2d 1274, 1276-77 (D. Utah 2005) (*citing United States v. Spectrum Emergency Care.*, 190 F.3d 1156, 1160 n.5 (10th Cir. 1999)).  *See also Paper, Allied-Indus., Chem. & Energy Workers Int'l Union v. Cont'l Carbon Co.,* 428 F.3d 1285, 1292 (10th Cir. 2005).  When jurisdiction is challenged under Rule 12(b)(1), the plaintiff bears the burden of producing evidence sufficient to establish the court's subject matter jurisdiction by a preponderance of the evidence.  *Southway v. Cent. Bank of Nigeria*, 328 F.3d 1267, 1274 (10th Cir. 2003).

**2.      This Court Does Not Have Subject Matter Jurisdiction to Adjudicate Plaintiff's Claims regarding Roads for which there is No Case or Controversy**.

Because there is no present case or controversy between the United States and Kane

County as to the County's asserted rights-of-way on the five roads, the County lacks standing to

bring its claims as to those roads.  "The constitutional limits on standing eliminate claims in

which the plaintiff has failed to make out a case or controversy between himself and the

defendant." *Gladstone Realtors v. Vill. of Bellwood*, 441 U.S. 91, 99 (1979).  In other words, an

actual, live controversy must exist between the parties before jurisdiction is proper in federal

district court. *Garcia v. Bd. of Educ. of Albuquerque Pub. Schs.,* 520 F.3d 1116, 1123 (10th Cir.

2008) (*quoting McClendon v. City of Albuquerque*, 100 F.3d 863, 867 (10th Cir. 1996)).  "In

essence, 'this means that, throughout the litigation, the plaintiff must have suffered, or be

threatened with, an actual injury traceable to the defendant and likely to be redressed by a

favorable judicial decision.'" *Id.*. (*quoting Lewis v. Continental Bank Corp*., 494 U.S. 472, 478

(1990)).  *Cf. Unified School Dist. No. 259 v. Disability Rights Ctr. of Kan.*, 491 F.3d 1143, 1147

(10th Cir. 2007) (*quoting Cox v. Phelps Dodge Corp.*, 43 F.3d 1345, 1348 (10th Cir.1994)) ("It

is well established that what makes a declaratory judgment action 'a proper judicial resolution of

a "case or controversy" rather than an advisory opinion is the settling of some dispute which

affects the behavior of the defendant toward the plaintiff.'").

     Under similar circumstances, this Court determined that a county seeking to quiet title to

alleged R.S. 2477 rights-of-way on roads crossing federal land had not presented a case or

controversy.  *See Washington County v. United States*, 903 F. Supp. 40, 41 (D. Utah 1995).  In

that case, the plaintiff had alleged that the "United States claims, or may claim, the right to deny

[plaintiff] its right to construct and maintain its R.S. 2477 rights-of-way to meet applicable safety

standards."  *Id.*  The court found such allegation insufficient to present "a definite and concrete

controversy."  *Id.*  Rather, the court held that because the plaintiff had not alleged that the United

States had "interfered with or denied the existence of any rights claimed by [the plaintiff]," the complaint failed to present a case or controversy sufficient to give the court jurisdiction over the matter.  *Id.* at 42.

Similarly, here Kane County does not demonstrate the existence of a definite and concrete controversy relating to its claimed rights-of-way for the five roads because it does not demonstrate that the United States has "interfered with or denied" the alleged rights.  First, despite its new allegations, the First Amended Complaint does not demonstrate a case or controversy relating to the Hancock, Sand Dune or Skutumpah roads.  Kane County now alleges that BLM has closed these roads in the RMP.  (See First Am. Compl., ¶¶ 85, 93.)  However, such conclusion can only result from a misinterpretation of the RMP.  As described above, the RMP does not provide that BLM was closing these roads, and any possible confusion in this regard is eliminated by BLM's publication of official maps demonstrating that such roads remain open.

In any case, any claimed confusion by Kane County at this point is contrived: prior to issuance of the final RMP, BLM issued a draft RMP containing four alternative route designation maps (which, like Map 10, did not show any of these three roads), and invited public comment.  Kane County in fact provided extensive comments regarding the draft RMP, including the transportation plan portion of it, and it did not express concern that the draft RMP appeared to close any of these roads.

Next, as it did in its Amended Complaint, Kane County persists in its allegation that a representative of the Interior Department stated that Kane County has no rights-of-way.  (First Am. Compl., ¶¶ 90 & 97.)  Notwithstanding Kane County's allegation in this regard, it does not and cannot point to any official determination or claim by the United States that Kane County

does not hold an R.S. 2477 right-of-way for the Hancock, Sand Dune, or Skutumpah roads, or any action by the United States interfering with Kane County's putative R.S. 2477 rights-of-way on the roads. Indeed, the only official statement regarding any of these roads is a previous administrative determination that the Skutumpah road likely does satisfy the requirements to be recognized as an R.S. 2477 right-of-way. (*See* Excerpt of BLM R.S. 2477 Administrative Determinations, attached hereto as Exhibit Q, at 47.)

As discussed above, Kane County appears to believe that the decision issued by the *TWS* Court somehow creates a case or controversy between the United States and Kane County. First, the United States disagrees with Kane County's characterization of the *TWS* holding. As discussed above, the *TWS* court did not address whether Kane County holds any R.S. 2477 right-of-way. Rather, the *TWS* court held (as expressly clarified in its June 13, 2008 order, and as recognized by this Court in separate proceedings), that "before Kane County <u>can disregard federal road closures or restrictions</u> imposed on R.S. 2477 rights-of-way, it must first demonstrate the validity of its claimed R.S. 2477 rights-of-way in a court of law." *In re Kane County*, Case No. 2:08-MC-156, 2008 WL 3833803, at *2 (D. Utah Aug. 13, 2008) (emphasis added); *The Wilderness Society*, 2008 WL 2421163, at *1. Kane County's apparent interpretation of the *TWS* decision–that Kane County does not hold any rights-of-way unless and until adjudicated in a court of law– makes no sense; if no right-of-way existed, there would be nothing to which to quiet title. Further, Kane County's interpretation conflicts with the Tenth Circuit's recognition that such rights-of-way vest automatically. *See SUWA*, 425 F.3d at 754 ("[a]ll that is required [for title to an R.S. 2477 right-of-way to pass to a grantee] . . . are acts on the part of the grantee sufficient to manifest an intent to accept the congressional offer.").

21

Kane County cannot carry its burden to demonstrate that the United States "interfered with or denied the existence of any rights claimed by" the County, as necessary to establish jurisdiction here. *See Washington County*, 903 F. Supp. at 41. As it did in its Amended Complaint, Kane County attempts to carry its burden by asserting that the Department of the Interior created a case and controversy by expressly stating that the County does not have any R.S. 2477 rights-of-way. (First Am. Compl. ¶¶ 90 & 97.) Specifically, the County contends a dispute arose due to the statement by Mr. Karkut (the only employee of the Department of the Interior present at the July 30, 2008 meeting) that "Kane County has no R.S. 2477 right-of-way," including for the Hancock, Sand Dune, and Skutumpah roads. (First Am. Compl., ¶¶ 90, 97.) However, Mr. Karkut was not authorized to take action sufficient to create a dispute between the United States and Kane County regarding the County's purported rights-of-way. In his capacity as attorney-advisor, Mr. Karkut is not authorized to make decisions on behalf of BLM or the Department of the Interior to deny the existence of Kane County's putative rights-of-way. (Karkut Decl., ¶ 7.) *See also United States v. Watashe*, 102 F.2d 428, 431 (10th Cir. 1939) ("Without statutory authority, subordinate officials have no power with respect to the duties of an office involving the exercise of judgment and discretion"). Moreover, as is evident on the face of the Norton Memorandum, there are numerous ways for a county to seek the agency's official position on county right-of-way claims. As a result, Mr. Karkut was not the type of "representative of the Department of Interior" who had the authority to create a dispute between the County and the United States. (*See* First Am. Compl., ¶ 90.)

In any case, Kane County, as plaintiff, carries the burden of proving jurisdiction by a preponderance of the evidence. *See Lindstrom v. United States*, 510 F.3d 1191, 1193 (10th Cir.

2007).  Here, the County's allegations are directly contradicted.  Mr. Karkut never stated that

Kane County does not hold any R.S. 2477 rights-of-way in general, or as to any of the roads at

issue in this litigation.  (Karkut Decl., ¶ 6.)  Indeed, most of the roads (including the Sand Dune

and Hancock roads) were never even mentioned at the meeting.  (Karkut Decl., ¶ 7.)  Nor did

Mr. Karkut state that the Department of the Interior agreed with the County's erroneous

characterization of the *TWS* order.  (Karkut Decl., ¶ 7.)  Under these circumstances, the Court

should reject the County's efforts to manufacture a case and controversy.

    The First Amended Complaint's new allegations specific to the Skutumpah road also fail

to demonstrate a case or controversy with respect to the County's claimed right-of-way.  First,

Kane County alleges that this court, in *TWS*, effectively determined that "Kane County does not

own an R.S. 2477 right-of-way for the Skutumpah road."  (First Am. Compl., ¶ 81.)  Kane

County is wrong.  While the *TWS* court did reach a "conclu[sion] that no R.S. 2477

determination has been made by a court of law concerning the Skutumpah road," the court

reached no conclusion about whether Kane County does in fact own such a right-of-way.  *See*

560 F. Supp. 2d at 1160-61.  To the contrary:

> [A]s the court noted in an earlier opinion, the conclusion in [the TWS] case "need not
> rest on a determination regarding the veracity of any [R.S. 2477] claims the County
> might have.  Rather, the Court need only recognize that the presumption on federal
> land is that ownership and management authority lies with the federal government
> and that any adverse claimant, like the County here perhaps, is not entitled to win
> title or exercise unilateral management authority until it successfully has carried its
> burden of proof in a court of law."

*Id.* at 1160 (*quoting The Wilderness Society v. Kane County*, 470 F. Supp. 2d 1300, 1306 (D.

Utah 2006)).

    Moreover, as Kane County expressly acknowledges, BLM has previously made an

administrative determination that the Skutumpah road satisfies the applicable requirements for an R.S. 2477 right-of-way.  (Ex. Q; First Am. Compl., ¶ 80).  Kane County points to no instance where the United States has taken an official position or issued a new determination conflicting with its previous determination on the Skutumpah road.

Next, the County's conclusory allegation that the MMP "purports to restrict Kane County's regulation, use, and maintenance off the Skutumpah road within the Monument" provides no meaningful information about whether, much less how, the MMP conflicts with the County's claimed right-of-way.  To the extent the County's complaint is that the MMP restricts the use of certain segments of the road to street-legal vehicles, the complaint is jurisdictionally insufficient because it fails to allege such restriction conflicts with the scope of the County's putative right-of-way on Skutumpah road, much less how they conflict.  Moreover, in light of the fact that, in its response to the United States' previous motion for partial dismissal, Kane County conceded that "Kane County does not currently have an ordinance authorizing ATV travel on Kane County roads," (*see* Pl.'s Resp., Doc. No. 50, at 12,) no grounds would appear for an allegation by Kane County that the MMP's restrictions on non-street legal vehicles conflict with the County's rights.  In any case, courts have consistently recognized that some level of federal regulation is consistent with the existence of an R.S. 2477 right-of-way.  *See McFarland v. Kempthorne*, 545 F.3d 1106, 1112 (9th Cir. 2008) ("Even where a statutory right of access exists, the Park Service has broad discretion to regulate its use"); *United States v. Jenks*, 22 F.3d 1513, 1518 (10th Cir. 1994) (under basic principles of property law, easement rights over federal land are subject to regulation by the government as the owner of the servient estate).

Regarding maintenance, the MMP generally provides that "open routes [such as the

Skutumpah road] may be maintained within the disturbed travel surface as of the date of this plan; no widening, passing lanes, or other travel surface upgrades could occur." (MMP, at Tran-7.) However, Kane County has not alleged that these maintenance provisions conflict with the scope of the County's putative right-of-way, much less how these provisions conflict.

Finally, the additional statements alleged to have been made by unidentified representatives of the Interior Department, purportedly asserting that Kane County does not have a right-of-way for the Skutumpah road, are insufficient to establish jurisdiction. Plaintiff does not indicate specifically who made the alleged statements, despite the County's obligation, under the QTA, to plead with particularity, "the nature of the United States' adverse claim." *See* 28 U.S.C. § 2409a(a). Nonetheless, even if such statements actually were made by Defendant's representatives, they would not constitute the type of "interfere[nce] with or deni[al of] the existence of any rights claimed by" Kane County that could suffice to support jurisdiction in this case. *See Washington County,* 903 F. Supp. at 41. On their faces, the putative statements about the Tenth Circuit's decision in *SUWA v. BLM* and about the County's historic practices do not, either expressly or by necessary implication, deny the existence of an underlying right-of-way. Similarly, the putative statement that Kane County must quiet title to establish rights is a legal rule based on the case law and, as discussed with respect to the *TWS* decision, above, does not constitute a denial of the existence of a right-of-way. Ultimately, it strains credulity for Kane County to argue that the United States was in fact contesting with such statements the existence of an R.S. 2477 right-of-way for the Skutumpah road, especially in light of BLM's previous administrative determination that the road likely met the requirements to be recognized as an

R.S. 2477 right-of-way.[12]/

Similarly, Kane County makes no cognizable allegation that Defendant has interfered with or denied the existence of the County's alleged rights-of-way on the Tenny Creek and Oak Canyon roads. (*See generally*, First Am. Compl.) Rather, the County attempts to lump these roads together with its claims regarding the Mill Creek road–for which it alleges a controversy based on BLM's delay in responding to the County regarding its proposed improvements on that road. However, the First Amended Complaint does not allege that the County proposed making any improvements on the Tenny Creek or Oak Canyon routes, and in fact, the exhibits attached to the complaint establish that it did not do so. (First Am. Compl., ¶ 65 & Ex. 9 thereto, pp. 8-9). The County's proposed improvements were limited to the eastern part of the Bald Knoll road and the Mill Creek road from its southern terminus at the Skutumpah road to where it connects with the Bald Knoll road.[13]/ (*Id. See also* Ex. O, at 1-2, noting that "Bald Knoll and Mill Creek Roads require improvements from the proposed mine site to Skutumpah Road").

In its First Amended Complaint, Kane County now appears to claim that a controversy exists as to the Tenny Creek and Oak Canyon roads because the RMP purports to (1) regulate and (2) close these roads. (*See* First Am. Compl, ¶ 79.) However, the RMP does not close these roads or regulate them in any manner inconsistent with the potential existence of R.S. 2477

---

[12]/    The County also alleges that "representatives of the Department of Interior provided assistance to plaintiffs in the TWS Decision." (See First Am. Compl., ¶ 87.) This allegation is so vague and lacking in detail as to be meaningless, and certainly cannot support a determination that the United States denied or interfered with Kane County's putative right-of-way.

[13]/    As demonstrated by the County's Exhibit 1A, the Tenny Creek and Oak Canyon roads intersect the Mill Creek road over a mile to the north and north-northwest respectively of the intersection of the Bald Knoll and Mill Creek roads. (*See* Am. Compl., Ex. 1A.)

rights-of-way held by Kane County.  The RMP and Kanab West map address the Tenny Creek

and Oak Canyon routes only by designating them as "open."  The First Amended Complaint

provides no detail as to how such a designation can somehow deny or interfere with Kane

County's putative rights-of-way relating to these routes.

As a result, the County does not meet its burden of demonstrating that subject matter

jurisdiction exists for its claims to the five roads, and the Court should dismiss the claims related

to those roads.

**3.     Under the Quiet Title Act, the United States has not Waived its Sovereign Immunity
        for Claims regarding Roads for which there is no Present Dispute as to Title.**

Alternatively, and for similar reasons, Kane County's claims as to the five roads must be

dismissed because the claims fail to satisfy the prerequisites for the QTA's waiver of sovereign

immunity.  The QTA waives the United States' sovereign immunity only where there is a

"disputed title to real property."  *See* 28 U.S.C. § 2409a(a).  Because the First Amended

Complaint contains no supportable allegations demonstrating a present controversy between

Defendant and Kane County regarding these roads (i.e., there is no disputed title to real

property), the QTA does not waive the United States' sovereign immunity as to Kane County's

claims regarding these roads.

Absent an express waiver of sovereign immunity, federal courts lack subject matter

jurisdiction over suits against the United States.  *Harrell v. United States*, 443 F.3d 1231, 1234

(10th Cir. 2006).  Plaintiff invokes the QTA, which provides the sole waiver of the United

States' sovereign immunity to suits seeking to quiet title to federal lands.  *Southwest Four Wheel

Drive Assoc. v. Bureau of Land Mgmt.*, 363 F.3d 1069, 1071 (10th Cir. 2004).  As with any

waiver of sovereign immunity, the QTA "must be construed strictly."  *Alaska v. United States,*
201 F.3d 1154, 1160 (9th Cir. 2000).  *See also F.T.C. v. Kuykendall*, 466 F.3d 1149, 1156 (10th
Cir. 2006) ("waivers of sovereign immunity must be strictly construed in favor of the United
States"); *Ginsberg v. United States*, 707 F.2d 91, 92 (4th Cir. 1983) *(quoting Soriano v. United
States*, 352 U.S. 270, 276, 77 S.Ct. 269, 273 (1957)) ("The terms under which the United States
consents to be sued 'must be strictly observed and exceptions thereto are not to be implied'").

At least two conditions must exist before a district court can exercise jurisdiction under
the QTA: "(1) the United States must claim an interest in the property at issue, and (2) there
must be a disputed title to real property."  *Leisnoi, Inc. v. United States*, 170 F.3d 1188, 1191
(9th Cir. 1999).  Thus, for jurisdiction under the QTA to lie, "there must be a conflict in title
between the United States and the plaintiff."  *Id*. at 1192.

Courts have strictly applied this threshold requirement, dismissing cases where there was
no present dispute or conflict in title.  For instance, in *Alaska v. United States*, the State of
Alaska sought to quiet title to, among other property, the riverbed of the Black River.  201 F.3d
at 1164-65.  The State argued that, based on the position the United States had taken on several
similarly-situated rivers, the United States would dispute Alaska's claim to the riverbed of the
Black River and therefore a QTA claim was cognizable.  The Ninth Circuit disagreed, and held
that because the United States had never actually disputed Alaska's claim as to that specific
river, there was no basis for a QTA claim as to that river.  *Id.*  This was so even though the
United States refused to either confirm or deny the State's claimed property right:

> The United States reserves the right to start a dispute, and has not disclaimed any
> interest.  There may well be a dispute at some time, considering that the federal
> position on the Black simply followed the administrative determination on [other

> rivers], and it has taken conflicting positions on those rivers.  But whatever
> dispute there may be, it has not yet occurred.

*Id.* at 1164-65 (emphasis added).

The circumstances here parallel those in *Alaska v. United States*.  Specifically, the County demonstrates no dispute or conflict relating to Kane County's asserted real property interests in the five roads.  As discussed above, the First Amended Complaint contains no supportable allegations that the United States has disputed that Kane County may hold R.S. 2477 rights-of-way with regards to the Hancock, Sand Dune, Skutumpah, Oak Canyon, or Tenny Creek roads, nor interfered with the County's putative rights-of-way.  Under these circumstances, Kane County has not demonstrated that there is a dispute or conflict in title related to the County's claimed rights-of-way on any of these roads, and therefore this Court has no jurisdiction to hear claims under the QTA regarding the five roads.  *Alaska*, 201 F.3d at 1164-65 ("[a] title cannot said to be 'disputed' by the United States if it has never disputed it").  The claims must therefore be dismissed for lack of subject matter jurisdiction.  *See Southwest Four Wheel Drive Ass'n.*, 363 F.3d at 1071 (holding that where a plaintiff cannot state a claim within the terms of the QTA's provisions, the federal courts lack jurisdiction over its suit).

## CONCLUSION

As demonstrated above, the Court lacks jurisdiction over Plaintiff Kane County's claims seeking to quiet title to alleged R.S. 2477 rights-of-way where Plaintiff fails to demonstrate an actual case or controversy, or any present disputed title to real property.  As a result, the Court should partially dismiss Plaintiff's First Cause of Action, to the extent it seeks relief with regards to the Tenny Creek and Oak Canyon roads, and should dismiss Plaintiff's Third, Fourth, and

Fifth Causes of Action, for lack of subject matter jurisdiction.

      Dated: this 9th day of March, 2009.

                            JOHN C. CRUDEN
                            Acting Assistant Attorney General


                             s/Romney S. Philpott
                            ROMNEY S. PHILPOTT
                            Trial Attorney
                            U.S. Department of Justice
                            Environment & Natural Resources Division
                            Natural Resources Section

                            BRETT L. TOLMAN
                            United States Attorney, District of Utah
                            JOHN K. MANGUM
                            Assistant United States Attorney

                            ATTORNEYS FOR THE UNITED STATES


Of Counsel:

James Karkut
Office of the Solicitor
Department of the Interior

30

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I am an employee of the United States Department of Justice

and that the foregoing **MEMORANDUM IN SUPPORT OF RENEWED MOTION FOR**

**PARTIAL DISMISSAL** with attached exhibits was electronically filed with the Court via its

CM/ECF system on this 9th day of March, 2009, which is relied upon to then promptly give

electronic notice of the same to counsel for the Plaintiff and proposed intervenors:

Shawn T. Welch
Kendra Shirey
Elizabeth B. Harris
Holme Roberts & Owen LLP
299 S. Main St., Ste. 1800
Salt Lake City, UT  84111-2263

William L. Bernard
Deputy Kane County Attorney
76 N Main St.
Kanab, UT 84741

Heidi J. McIntosh
Southern Utah Wilderness Alliance
425 E 100 S
Salt Lake City, UT 84111

Edward Zukoski
Earth Justice
1400 Glenarm Place, #300
Denver, CO 80202

/s/ Romney Philpott