IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| KANE COUNTY, UTAH<br><br>Plaintiff,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:08-cv-00315<br><br>Judge Clark Waddoups |
|---|---|

## INTRODUCTION

Plaintiff Kane County, Utah has filed an action against the United States to quiet title to fifteen roads[1] and rights-of-way in Kane County, Utah. The State of Utah (the "State") has intervened in the action due to its interest in the roads. Kane County has filed a motion for partial summary judgment on the first eight causes of action, which the State has joined. The ninth cause of action, involving the Cave Lakes roads, has been reserved for trial. On February 4, 2011, the court heard oral argument and granted summary judgment in favor of Kane County on certain issues and took another issue under advisement. Prior to the argument, on December 16–17, 2010, the court toured the roads at issue and received explanations of the issues from each party's counsel. This memorandum decision memorializes the rulings announced from the bench at the February 4, 2011 hearing and addresses the remaining issue argued on that date. After due consideration of the

---

[1] The number of roads varies between twelve and fifteen depending on whether certain road segments are counted as part of a larger road or as a separate road.

parties' briefing, oral arguments, and the legal authorities, the court grants in part and denies in part Kane County's motion for summary judgment.

## FACTUAL BACKGROUND

Following the hearing on February 4, 2011, one issue remains for the court to address on the motion for partial summary judgment. It pertains to five parcels designated as School and Institutional Trust Lands ("SITLA"). Shortly after the presidential proclamation created the Grand Staircase-Escalante National Monument, the State agreed to exchange SITLA sections within the Monument for sections outside of the Monument. The former SITLA sections over which the roads at issue cross are now in federal ownership. This decision is limited to the select sections discussed herein. Accordingly, the court does not recite all of the facts presented by the parties in their briefs, but focuses only on those relevant to the remaining issue.

In this case, the government concedes that Kane County has a vested interest in some of the roads at issue, but it denies that Kane County has a right-of-way across the former SITLA parcels. The five parcels at issue are identified as follows:

1. Section 32, Township 40 South, Range 4.5 West, S.L.M., through which the Skutumpah and Mill Creek roads traverse ("SITLA Parcel One"). The section passed into state ownership in 1896.

2. Section 2, Township 40 South, Range 4 West, S.L.M., through which the Skutumpah Road traverses ("SITLA Parcel Two"). The section passed into state ownership in 1904.

3. Section 16, Township 40 South, Range 4 West, S.L.M., through which the Skutumpah Road traverses ("SITLA Parcel Three"). The section passed into state ownership in 1904.

4. Section 36, Township 39 South, Range 4 West, S.L.M., through which the Skutumpah Road traverses ("SITLA Parcel Four"). The section passed into state ownership in 1911.

5. Section 32, Township 39 South, Range 3 West, S.L.M., through which the Swallow Park/Park Wash Road traverses ("SITLA Parcel Five"). The section passed into state ownership in 1915.

Each of these parcels was then transferred back to the federal government in 1998, except for SITLA Parcel Four along the Skutumpah Road. That section transferred back into federal ownership in 1967. Since these transfers, the federal government has remained the title owner of the parcels.

**Mill Creek Road**

The Mill Creek Road intersects the Skutumpah Road on its south end. Both roads then traverse SITLA Parcel One.[2] The earliest map on which the Mill Creek Road is shown is dated 1914.[3] Although the map indicates the road likely was created at some point prior to 1914, that actual date is unknown. Therefore, the present record does not clearly establish that Mill Creek existed as a public highway when SITLA Parcel One passed into state ownership in 1896.

**Skutumpah Road**

The Skutumpah Road shows a long history of existence. The road begins on its north end close to Cannonville, Utah and connects to Johnson Canyon Road on its south end, close to Kanab, Utah. As early as the 1870s, communities were established in the Cannonville and Kanab areas. An 1877 cadastral survey plat map shows the "Skumpah Settlement" along the south end of

---

[2] *See* Kane County Bald Knoll Mill Creek Map (Dkt. No. 120, Ex. 29).

[3] *See* 1914 Cadastral Survey Plat Map (Dkt. No. 120, Ex. 31).

Skutumpah,[4] and an 1878 map shows Skutumpah ending at Clarkston, Utah.[5] The 1877 map also shows Skutumpah intersecting with another road on the south end.[6] Thus, from its early existence, Skutumpah has connected towns and provided access to other road systems. In total, the road spans approximately thirty-three miles.[7]

The entire length of the road appears on Froiseth's New Sectional and Mineral Map of Utah in 1878.[8] This is notable because the map's scale is small, due to it showing the entire state, yet it depicts Skutumpah with clarity. Moreover, the relevant road segments, crossing the SITLA Parcels located along Skutumpah, also appear on early cadastral survey plat maps before the respective SITLA Parcels passed into Utah's ownership.[9] Also notable is that the road's path on these early maps generally follows the same path of Skutumpah today despite the passage of more than 100 years.

Kane County Commission Minutes reflect work on the road dating back at least to 1919.[10] Further, it is uncontested that by 1967, Kane County was maintaining the road as a Class B road,

---

[4] 1877 Cadastral Survey Plat Map (Dkt. No. 120, Ex. 50).

[5] 1878 Froiseth New Section & Mineral Map of Utah (Dkt. No. 120, Ex. 56).

[6] 1877 Cadastral Survey Plat Map (Dkt. No. 120, Ex. 50).

[7] Acknowledgment & Notice of Acknowledgment of Acceptance of R.S. 2477 Right of Way Grant, 1 (June 12, 2008) (Dkt. No. 120, Ex. 43).

[8] 1878 Froiseth New Section & Mineral Map of Utah (Dkt. No. 120, Ex. 56).

[9] *See* 1877 Cadastral Survey Plat Map (Dkt. No. 120, Ex. 51) (showing Skutumpah Road through SITLA Parcel One); 1904 Cadastral Survey Plat Map (Dkt. No. 120, Ex. 52) (showing Skutumpah Road through SITLA Parcels Two and Three); 1909 Cadastral Survey Plat Map (Dkt. No. 120, Ex. 53) (showing Skutumpah Road through SITLA Parcel Four).

[10] *Compare* Kane County's Memo. in Supp. of Mot. for Partial Sum. Jdgmt., § 161 (Dkt. No. 120) *with* Defendant's Memo. in Opp'n to Kane County's Mot. for Partial Sum. Jdgmt., § 161 (Dkt. No. 129) (showing uncontested facts).

installing culverts, and performing other necessary work for public safety purposes.[11] The nature and use of this road has been so evident, that in 2000, the BLM issued an administrative determination that Skutumpah is an R.S. 2477 road.[12] Moreover, in 2008, the State issued a formal notice of acceptance of the R.S. 2477 right-of-way grant for the road.[13]

The federal government concedes Skutumpah is an R.S. 2477 road, with two exceptions. First, the government contends that in 1993 Kane County trespassed onto federal land when it re-routed a portion of the road. It therefore disputes that the "trespass" sections are part of the R.S. 2477 road. The government also contests that SITLA Parcels One through Four, located along the road, are part of the R.S. 2477 road because the parcels were owned by the State and an R.S. 2477 road must be established across federal land. Although the government does not contest that Skutumpah appeared on maps in the 1870s, while the land was in federal ownership, it argues that such evidence is insufficient to prove an R.S. 2477 road was established across the SITLA Parcels before they passed into state ownership.

**Swallow Park/Park Wash Road**

The Swallow Park/Park Wash Road is located in western Kane County. The northern portion of the road appears on the 1966 USGS Rainbow Point 7.5 minute topographic map, which was partly created using 1963 aerial photography and a 1966 field inspection.[14] Witness testimony indicates

---

[11] *See id.* § 162 (showing uncontested facts).

[12] BLM R.S. 2477 Admin. Determinations Kane County Claims, 51 (Dkt. No. 120, Ex. 63) (hereinafter "BLM Determination").

[13] Acknowledgment & Notice of Acknowledgment of Acceptance of R.S. 2477 Right of Way Grant, 1 (June 12, 2008) (Dkt. No. 120, Ex. 43).

[14] 1965 USGS Rainbow Point 7.5 Minute Topographic Map (Dkt. No. 120, Ex. 60).

the road may have existed as early as the 1930s. None of the evidence presented, however, shows that the road was clearly established as a public highway when SITLA Parcel Five, passed into state ownership in 1915.

## ANALYSIS

**I.     STANDARD OF REVIEW**

"Summary judgment is appropriate if the pleadings, depositions, other discovery materials, and affidavits demonstrate the absence of a genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."[15] "Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to go beyond the pleadings and set forth specific facts showing that there is a genuine issue for trial."[16] "An issue is genuine 'if the evidence is such that a reasonable [fact finder] could return a verdict for the nonmoving party.'"[17] The evidence and all reasonable inferences that may be drawn therefrom are construed "in the light most favorable to the nonmovant."[18]

**II.    SITLA PARCELS**

    **A.     Interpretation of R.S. 2477 Statute**

Kane County seeks to quiet title to the roads at issue based on R.S. 2477.[19] Congress enacted this statute in 1866, which provides, "[t]hat the right of way for the construction of highways over

---

[15] *Sally Beauty Co., Inc. v. Beautyco, Inc.*, 304 F.3d 964, 971 (10th Cir. 2002) (citing Fed. R. Civ. P. 56(c)).

[16] *Id.* (citation omitted).

[17] *Id.* at 972 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[18] *Id.* (citation omitted).

[19] At issue in this section are the Skutumpah, Mill Creek, and Swallow Park/Park Wash roads because these roads traversed the former SITLA Parcels.

public lands, not reserved for public uses, is hereby granted."[20] The earliest regulation addressing this statute was promulgated in 1939.[21] It stated,

> The grant under R.S. 2477 becomes effective upon the construction or establishing of highways, in accordance with the State laws, over public lands not reserved for public uses. No application should be filed under said R.S. 2477 as no action on the part of the Federal Government is necessary.[22]

In 2005, the United States Court of Appeals for the Tenth Circuit stated the 1939 regulation "indicates that the BLM interpreted the grant to take effect without any action on its part."[23] This same language was carried forward in subsequent regulations until after R.S. 2477 was repealed.[24] Nevertheless, the issue remained about "how a valid R.S. 2477 right of way is acquired."[25] The Tenth Circuit has concluded the following:

> [F]ederal law governs the interpretation of R.S. 2477, but that in determining what is required for acceptance of a right of way under the statute, federal law "borrows" from long-established principles of state law, to the extent that state law provides convenient and appropriate principles for effectuating congressional intent.[26]

In Utah, it is long-established law that "[a] highway is dedicated and abandoned to the use

---

[20] Section 8 of the Mining Law of 1866, 14 Stat. 253, later codified as Revised Statue 2477, and then as 43 U.S.C. § 932. The statute was repealed in 1976.

[21] *S. Utah Wilderness Alliance v. Bureau of Land Mgmt.*, 425 F.3d 735, 755 (10th Cir. 2005) (hereinafter "*2005 SUWA Decision*").

[22] *Id.* (quoting 43 C.F.R. § 244.55 (1939) (alteration omitted)).

[23] *Id.*

[24] *Id.* at 755–56.

[25] *Id.* at 758.

[26] *Id.* at 768.

of the public when it has been continuously used as a public thoroughfare for a period of ten years."[27] Such "public use" statutes require no formal action by local government authorities for a right of way to be accepted.[28] "This was the common law rule" because "[t]he common law mode of indicating an acceptance by the public of a dedication is by a user of sufficient length to evince such acceptance."[29] Other states, however, have required some official action by local authorities "before a public highway could be deemed 'accepted.'"[30] "In such states, the appropriation of public funds for repair [has] generally [been] deemed sufficient to manifest acceptance by the public body."[31]

### B. Acceptance of R.S. 2477 by Utah

#### i. General Means of Acceptance

As stated above, the Tenth Circuit has recognized one mode of acceptance in Utah is by public use. It explained in the *2005 SUWA Decision*, however, that "[t]his case does not raise the question, and we do not decide, whether a road officially laid out or erected for public use by state or local governmental authority, prior to repeal of R.S. 2477, would qualify as a highway without proof of ten years' continuous public use."[32] Kane County contends more than one mode can be and was used by Utah to indicate acceptance. Notably, R.S. 2477 "does not make any distinction as to

---

[27] Utah Code Ann. § 72-5-104 (2011).

[28] *2005 SUWA Decision*, 425 F.3d at 770 (citations omitted).

[29] *Id.* (quotations and citation omitted).

[30] *Id.* (citations omitted).

[31] *Id.* (citation omitted).

[32] *Id.* at 778.

-8-

the methods recognized by law for the establishment of highways."[33] Consequently, courts have concluded "highways may be established by any method recognized by law in [a] state."[34]

Utah statutory law in 1898 specified that roads "[1] laid out or erected as such by the public, or [2] dedicated or abandoned to the public, or [3] made such in actions for partition of real property, are public highways."[35] Thus, from Utah's earliest statutory law, the State recognized three methods of creating public highways. Any doubt that "laid out or erected" is a different method than "dedicated or abandoned to the public" is dispelled by the subsequent section, which specifies that a "dedicated or abandoned" road is one continuously used by the public for ten years.[36] While the particular language of these statutes has changed through the years, the underlying concepts have not. Certain Utah roads are still laid out, erected and maintained, while others exist merely through public use. Yet, both types are deemed public highways.[37] To say, nevertheless, that only roads created by ten years of public use may be R.S. 2477 roads in Utah would be to ignore express actions taken by state and local authorities in favor of more ambiguous actions taken by the public in general. The

---

[33] *Girves v. Kenai Peninsula Borough*, 536 P.2d 1221, 1226 (Alaska 1975); *see also United States v. 9947.71 Acres of Land*, 220 F. Supp. 328 (D. Nev. 1963); *Wilson v. Williams*, 87 P.2d 683, 685 (N.M. 1939) ("There is no particular method required or recognized as the proper one for the establishment of highways under this grant.").

[34] *Girves*, 536 P.2d at 1226 (citing *9947.71 Acres of Land*, 220 F. Supp. at 335) ("[A] highway may be established across or upon such public lands in any of the ways recognized by the law of the state in which such lands are located."); *Wallowa County v. Wade*, 72 P. 793, 795 (1903); *Smith v. Mitchell*, 58 P. 667, 668 (Wash. 1899)).

[35] Utah Rev. Stat., Title 25, Ch. 1, § 1114 (1898) (Dkt. No. 120, Ex. 1).

[36] *Id.* § 1115. Moreover, it is well established that when a legislative body uses different phrases in the same statute, the rules of statutory construction require the court to find the phrases have a distinct meaning from one another. *Utah Int'l Inc. v. Andrus*, 488 F. Supp. 962, 968 (D. Utah 1979). "Otherwise, [the legislature] would not have employed the two different phrases in the same [section]." *Id.*

[37] *See* Utah Code Ann. §§ 72-3-102 to -105, 72-5-103 to -104 (2011).

plain language of R.S. 2477 does not support this position. The court therefore concludes that ten years of public use is not the only method by which an R.S. 2477 road may be created in Utah.

### ii. Specific Means of Acceptance

In 1993, the Utah Legislature defined what constitutes "acceptance" of an R.S. 2477 grant in Utah.[38] Although this legislation was passed after the repeal of R.S. 2477 in 1976, the statute sets forth conditions that had to exist prior to the repeal. Consequently, only if such conditions existed prior to 1976, may a road be considered "accepted" under the statute. The conditions outlined in the 1993 legislation are in harmony with Utah's earliest statutory law because they focus on roads that were "laid out or erected" by various means and those created by ten years of public use.[39]

The 1993 legislation also addressed SITLA lands.[40] It states:

> "[A]cceptance of a right-of-way for the construction of a highway over public lands, not reserved for public uses," or "accepted" so as to vest the R.S. 2477 dominant estate in the right-of-way in the state and any applicable political subdivision of the state, means one or more of the following acts prior to October 21, 1976:
>
> (a) by the state or any political subdivision of the state:
> . . . .
> (v) (A) the acceptance at statehood of the school or institutional trust lands accessed or traversed by the right-of-way; or

---

[38] 1993 Utah Laws 2nd Sp. Sess. Ch. 6, § 2 (codified at Utah Code Ann. § 27-16-102 and later renumbered as § 72-5-301).

[39] *Id.*

[40] In 1992, the Utah Legislature set forth procedures that one must follow to obtain a recognized easement across SITLA lands. 1992 Utah Laws, Ch. 289 (codified at Utah Code §§ 27-12-103.2 to -103.4 and later renumbered as §§ 72-5-201 to -203). The court looks to the 1993 legislation on this issue because it was passed later and is more specific to the issue at hand. The 1992 SITLA legislation remains relevant, however, for roads established across SITLA sections after the land passed into state ownership. Moreover, nothing in this decision impacts the authority of the State to vacate a public road (including an R.S. 2477 road) that crosses SITLA property if it determines that its fiduciary obligations are best carried out by vacation of the road.

> (B) the selection and receipt by the state of a clear list, indemnity list, or other document conveying title to the state of school, institutional trust lands, or other state lands accessed or traversed by the highway.[41]

In other words, the Legislature declared that if a road traversed federal land *at the point* when the federal land passed into state ownership as a SITLA section, *and* that period of time was prior to 1976, then that road meets the definition of having been "accepted."[42] The statute then provides:

> (3) (a) Acceptance of a right-of-way for the construction of a highway over public lands, not reserved for public uses, is presumed if the state or a political subdivision of the state makes a finding that the highway was constructed and the right-of-way was accepted prior to October 21, 1976.
>
> (b) The existence of a highway in a condition suitable for public use establishes a presumption that the highway has continued in use in its present location since the land over which it is built was public land not reserved for public use.[43]

Thus, if the State or Kane County can show it has met these requirements for the SITLA Parcels, they will have established that the right of way was "accepted" and that a road across such parcels qualifies as an R.S. 2477 road if not otherwise rebutted.

It is important to note in this analysis that claims of an R.S. 2477 road often have been opposed by (1) private property owners if the land had already passed into private ownership when a claim is made or (2) the federal government if the land has remained in the federal public domain.

---

[41] 1993 Utah Laws 2nd Sp. Sess. Ch. 6, § 2; Utah Code Ann. § 72-5-301(1)(a)(v) (2011).

[42] A similar statute existed in 1898 that applied to individuals acquiring land from the federal government. It stated that if a person acquired land from the federal government and a public road traversed the land for less than ten years, that road nevertheless had to remain open if the landowner failed to object to the road's existence within three months after the land passed into private hands. Utah Rev. Stat., Title 25, Ch. 1, § 1124 (1898) (Dkt. No. 120, Ex. 1).

[43] 1993 Utah Laws 2nd Sp. Sess. Ch. 6, § 3; Utah Code Ann. § 72-5-302(3).

Under both scenarios, the claimant is trying to assert an adverse claim against the property owner. Legislation that adversely seeks to impose a public road across such property, after it has been acquired by the property owner, would therefore require close scrutiny.

The 1993 legislation regarding SITLA sections is distinguishable from the typical challenge, however, because it is an action by the State recognizing a right across the State's own property. It is not a case of one owner (or the public) attempting to enforce a right against an adverse owner. Because the State enacted these provisions, they may operate as a declaration from the State about the roads it intended to accept across SITLA sections.

The government's position with respect to the SITLA Parcels is curious because it asserts an R.S. 2477 road cannot exist across them since R.S. 2477 granted roads across federal lands and the SITLA Parcels were state owned. Again, however, the 1993 legislation specifies that if a road existed across *federal land* when the SITLA Parcel passed into state ownership, then the grant was accepted by the State. As long as the State owned the SITLA Parcels at the time of the 1993 legislation, this declaration imposed no burden against any property owner other than the State itself. Thus, it is not *post hoc* legislation that attempted to re-write history to the disadvantage of the federal government, but was a recognition by the State of an R.S. 2477 road across land then owned by the State. Accordingly, the court recognizes this particular means of accepting an R.S. 2477 grant.

### C. SITLA Parcels Along Skutumpah

The evidence shows that the Skutumpah Road traversed SITLA Parcels One through Four at the time those parcels were transferred from federal ownership into state ownership.[44] The entire Skutumpah Road appears on an 1878 map, following the same general course that remains today,

---

[44] *See* Cadastral Survey Plat Maps, *supra* note 9.

and it also appeared on the earliest cadastral survey plat maps for those sections. The fact that the road appeared on these early maps *and* continues on to this day, following the same general course shown on those maps, shows its early existence in a condition suitable for public use.

Additionally, the facts of this case sufficiently show that Kane County has found Skutumpah to be accepted and constructed for public use before October 21, 1976.[45] Records show Kane County has worked on the road at least since 1919, and it has maintained it as a Class B road at least since 1967. The road was subject to litigation between the BLM and Kane County in 1996.[46] That litigation precipitated the BLM's efforts to determine whether Skutumpah was an R.S. 2477 road.[47] Thus, prior to 1998, when SITLA Parcels One through Three were transferred back into federal ownership, the government was on notice that the road traversing those parcels was presumed to be an R.S. 2477 road.[48] Moreover, the 1998 Exchange Patent that transferred SITLA Parcels One through Three back to the United Stated, stated the exchange was "[s]ubject to any valid, existing easement or right of way of any kind."[49] Not only has the government failed to rebut this evidence, it also has presented no evidence from which a material fact has been put into dispute.

---

[45] When referencing a "finding," the 1993 legislation does not specify that the finding must be through a formal legislative document. The facts of this case sufficiently show that Kane County has found Skutumpah to be accepted and constructed for public use. Additionally, in 2008, the State formally acknowledged it had accepted Skutumpah as an R.S. 2477 road.

[46] *See United States v. Kane County*, No. 2:96-cv-884 (D. Utah 1996) (consolidated into *S. Utah Wilderness Alliance v. Bureau of Land Mgmt.*, No. 2:96-cv-836 (D. Utah 1996)).

[47] *See* United States' Motion to Stay (requesting to stay proceedings for 270 days to allow the Secretary of Interior to make an administrative determination about the validity of the claimed R.S. 2477 rights-of way) (Dkt. No. 170 in Case No. 2:96-cv-836); *see also* BLM Determination, 1 (Dkt. No. 120, Ex. 63 in the present case).

[48] Those three parcels are Section 32, Township 40 South, Range 4.5 West, S.L.M. and Sections 2 and 16, Township 40 South, Range 4 West, S.L.M.

[49] State of Utah Exchange Patent No. 19232 (Dkt. No. 120, Ex. 98).

The same analysis, however, does not apply to SITLA Parcel Four, which passed back into federal ownership in 1967. Consequently, the federal government did not have the same notice as it did with the other three SITLA Parcels. Nevertheless, between 1967 and 1976, the R.S. 2477 statute was still in effect, and thus, the proffered grant could have been accepted by Kane County during that period.

Much of the same evidence that shows Kane County's "finding" about the road applies during the 1967 to 1976 period. SITLA Parcel Four was included in Kane County's classification of Skutumpah as a Class B road. This classification has existed at least since 1967. While mere classification is insufficient to establish a road as a public highway, Kane County did more than this. It acted in conformity with the designation by expending funds to grade, maintain, and improve Skutumpah for the public's use and safety.[50] For all intents and purposes, the road was laid out and erected for public use through continued maintenance and improvement of it by Kane County. Indeed, the road has been so well-defined that even the BLM's own administrative determination concluded that Skutumpah is an R.S. 2477 public highway. To this day, the government concedes all sections of Skutumpah meet the R.S. 2477 requirement, except for the SITLA Parcels and the "trespass" variances.

It is important to observe that when a road connects different towns and cities, as Skutumpah has since at least 1878, it is a continuous route rather than an intermittent one. A vehicle does not "fly over" a section leaving no road. Thus, while some sections bore the title "SITLA," they were nonetheless traversed in the same manner as the sections on each side of it. Like all other sections of Skutumpah, the road through SITLA Parcel Four was used as a public way from at least 1878 and

---

[50] It is also significant to note that there is no evidence that the federal government has expended any funds to maintain Skutumpah.

-14-

continued as a public way when the section passed back into federal ownership in 1967. Although the period of time between 1967 and 1976 is less than ten years, the court concludes that the uncontroverted evidence shows Kane County had accepted the grant by means other than public "dedication." It did so by classifying the road as a Class B road and then acting in conformity with the classification to show it intended the road to be a public way. The court therefore concludes, along the Skutumpah Road, an R.S. 2477 right-of-way exists over SITLA Parcels One through Four.

### D. SITLA Parcels Along Mill Creek and the Swallow Park/Park Wash Road

As stated in the factual background, evidence is lacking to show that Mill Creek and the Swallow Park/Park Wash roads existed at the time the relevant SITLA Parcels passed into state ownership. Kane County must therefore show other evidence that these roads became a public way either during the time the land was in federal ownership or by some means other than R.S. 2477. If Kane County elects to prove a public way by means other than R.S. 2477, it must provide notice to the government no later than July 1, 2011, about its theory.[51]

## III. FEBRUARY 4, 2011 HEARING

The following is a summary of the issues that were resolved during the February 4, 2011 hearing and the issues that were reserved for trial.

### A. Issues on Which Summary Judgment Was Granted

During the February 4, 2011 hearing, for the reasons stated on the record, the court granted summary judgment in Kane County's favor on the following issues:

---

[51] In its Amended Complaint, Kane County seeks to quiet title. Title may be quieted by means other than R.S. 2477. The government is entitled to clear notice, however, of the theory that Kane County will use to prove the existence of the public way.

1. Statute of Limitations

Kane County argued that its action is not barred by the statute of limitations. The government concurred. The court therefore granted summary judgment in favor of Kane County on this issue.

2. Sand Dune Road

Title to the Sand Dune Road, as described in Kane County's First Amended Complaint,[52] was quieted in favor of Kane County as an R.S. 2477 public highway right-of-way.[53]

3. Hancock Road

Title to the Hancock Road, as described in Kane County's First Amended Complaint,[54] was quieted in favor of Kane County as an R.S. 2477 public highway right-of-way.

4. Bald Knoll Road

Title to the Bald Knoll Road, as described in Kane County's First Amended Complaint,[55] was quieted in favor of Kane County as an R.S. 2477 public highway right-of-way. This includes the portion known as the Old Leach Ranch Road.

5. Skutumpah Road

Title to the Skutumpah Road, as described in Kane County's First Amended Complaint,[56] was quieted in favor of Kane County as an R.S. 2477 public highway right-of-way, except where the

---

[52] First Amended Complaint, Fourth Cause of Action (Dkt. No. 65).

[53] Per section 72-3-103 of the Utah Code, "[t]he state and county have joint undivided interest in the title to all rights-of-way for all county roads." Thus, by quieting title in Kane County's favor, it also quiets title in the State's favor.

[54] First Amended Complaint, Fifth Cause of Action.

[55] *Id.*, Second Cause of Action.

[56] *Id.*, Third Cause of Action.

road crosses SITLA Parcels One through Four and along the "trespass" sections. As discussed below, the court reserved for trial all issues pertaining to the "trespass" sections, and it took under advisement the SITLA issue that has now been addressed above.

      6.    <u>Mill Creek Road</u>

Title to the Mill Creek Road, as described in Kane County's First Amended Complaint,[57] was quieted in favor of Kane County as an R.S. 2477 public highway right-of-way for the following portions of the road:

      i.    Sections 5, Township 41 South, Range 4.5 West, S.L.M; and

      ii.    Sections 17, 20 and 29, Township 40 South, Range 4.5 West, S.L.M.

**B.    Issues Reserved for Trial**

During the hearing, the court reserved the following issues for trial.

      1.    <u>Skutumpah Variances</u>

The court made no findings regarding the realignments done by Kane County in 1993 on the Skutumpah Road and whether they constituted a permissible variance from the established route. The court reserved the issue for trial because evidence must be heard and weighed about the variances.

      2.    <u>Mill Creek Road</u>

Except for the segments stated in section III(A)(6) above and SITLA Parcel One, the court concluded it needed to hear witness testimony and weigh the evidence at trial before it could determine whether Kane County had a right of way over the remaining sections of the Mill Creek Road (including the Old Canyon and Tenny Creek spurs). Accordingly, it denied summary judgment as to these other sections of Mill Creek. It took under advisement whether Kane County had

---

[57] *Id.*, First Cause of Action.

established a right of way across SITLA Parcel One. Based on the courts analysis above, the court has now denied summary judgment on that parcel as well, as it applies to Mill Creek. Consequently, that issue is also reserved for trial.

       3.    <u>Scope</u>

Although the court determined that Kane County has a vested interest in the roads listed in section III(A) above, it has made no findings regarding the scope of its rights of way due to the fact-intensive nature of such a determination. Thus, issues pertaining to scope are likewise reserved for trial.

       4.    <u>Swallow Park/Park Wash, Swag, and Nipple Lake Roads</u>

Kane County also moved for summary judgment on the Swallow Park/Park Wash Road, the North Swag Road, and the Nipple Lake Road. The court denied summary judgment as to these roads, again due to the need to hear witness testimony and weigh the evidence at trial. In addition, two public water reserves exist along the Swallow Park/Park Wash Road. After further consideration, the court concludes that additional evidence and legal briefing is necessary before a decision can be rendered about the impact of the public water reserves on Kane County's claimed right of way. Consequently, that issue is likewise reserved for trial.

**IV.    MOTION TO STRIKE**

Kane County also moved to strike a document on the basis that it was an inadmissible settlement negotiation document. The document was signed in 1998 and addresses both maintenance and width of the roads at issue in this dispute. As stated above, issues pertaining to scope are reserved for trial. The court therefore denies as moot Kane County's motion to strike the document. Should the government seek to introduce the document at trial, Kane County may renew its motions at that time.

## **CONCLUSION**

For the reasons stated above, the court GRANTS IN PART and DENIES IN PART Kane County's motion for summary judgment.[58] The court concludes that the segments of Skutumpah that traversed four former SITLA Parcels were accepted under the R.S. 2477 grant. As for the segments of Mill Creek and the Swallow Park/Park Wash roads that traversed two former SITLA Parcels, material issues of fact are in dispute about whether rights of way have been established across them. The court DENIES AS MOOT Kane County's motion to strike.[59]

DATED this 20th day of June, 2011.

BY THE COURT:

_____
Clark Waddoups
United States District Judge

---

[58] Dkt. No. 119.

[59] Dkt. No. 142.