Heidi J. McIntosh #6277
Stephen H.M. Bloch #7813
Southern Utah Wilderness Alliance
425 East 100 South
Salt Lake City, UT 84111
Telephone:  (801) 486-3161
heidi@suwa.org, steve@suwa.org

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| KANE COUNTY, UTAH, | ) |
| | ) Civil Action No. 2:08-0315CW |
| Plaintiff, | ) Honorable Clark Waddoups |
| | ) |
| and the STATE OF UTAH, | ) |
| | ) AMICUS BRIEF OF |
| Plaintiff-Intervenors | ) SOUTHERN UTAH |
| | ) WILDERNESS ALLIANCE |
| | ) |
| v. | ) |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Defendant | ) |

1

TABLE OF CONTENTS

Introduction ………………………………………………………..…......3

Statement of Facts……………………………………………….…................…4

    I.     Background:  The BLM Wilderness Inventory….…….…………. 4

    II.    The BLM Specifically Warned Kane County that
         R.S. 2477 Rights of Way Would Not be Recognized
         Without a Formal Determination in 1991 …………….…………7

    III.   The United States Filed a Trespass Suit Against Kane County
         for the Swallow Park/Park Wash Route More than Twelve Years
         Prior to Kane County's Amended Complaint……………………9

Argument ……………………………………………………………….10

    I.     The Doctrine of Sovereign Immunity …………..........................10

    II.    Quiet Title Act ……………………………………………….....10

    III.   Kane County's Claims are Barred by the Statute of
         Limitations…………………………………………………......10

         A.  Construction of QTA's Statute of Limitations…………..…….12

                1.  Courts Construe the QTA's Statute of
                   Limitations Narrowly and in Favor of the
                   United States ……………………………….. 12

                2.  The Courts Use a Reasonable Test in Determining
                   When a County Plaintiff "Knew Or Should have
                   Known" of the United States' Claim………………12

         B.  The Statute of Limitations for the County's Claims was
            Triggered in 1991 When the BLM Warned the County
            That it Would Not Recognize the County's R.S. 2477
            Claims Without A Formal Determination of Their
            Validity……….……………………………………………. 14

         C.  The County's R.S. 2477 Claim to the Swallow Park/
            Park Wash Route is Barred by the Statute of Limitations for
            Additional Reasons………………………………….……..15

Conclusion…………………………………….........................……………………18

**INTRODUCTION**

The Southern Utah Wilderness Alliance *et al.* ("SUWA") hereby submits its amicus brief to raise critical issues concerning this court's jurisdiction over this matter.  Amicus have discovered new information which demonstrates that the twelve-year statute of limitations has run with respect to the County's claims.  *See* Quiet Title Act ("QTA"), 28 U.S.C. §§ 2409a(g).[1] SUWA, together with additional conservation groups, submitted their motion to file amicus trial briefs in this case on August 18, 2011 (Dkt. 177), but the court has not yet ruled on that motion.

Kane County initially filed its complaint for several of the routes in this case on April 25, 2008. (Dkt. No. 2.)  The county later followed with an amended complaint, filed on November 10, 2008 (Dkt. 24), which for the first time alleged that it held an R.S. 2477 right-of-way for the Swallow Park/Park Wash route.  In all, the County alleges that it owns rights-of-way for approximately thirteen routes which cross federal public lands managed by the Bureau of Land Management ("BLM").  R.S. 2477 provides, in its entirety, "the right of way for the construction of highways across public lands, not reserved for public uses, is hereby granted." 43 U.S.C. § 932, repealed by the Federal Land Policy and Management Act, 43 U.S.C. § 1701 *et seq.* (1976); *So. Utah Wilderness Alliance v. Bureau of Land Management*, 425 F.3d 735, 741 (10th Cir. 2005) ("*SUWA v. BLM*").  The routes range in character from the Swallow

---

[1] The United States inexplicably agreed that the statute of limitations had not run on these claims (Dkt. No. 160, Mem. Dec. and Order at 16), but the court's jurisdiction over a Quiet Title Act claim cannot be waived.  *See, e.g.*, *Skranak v. Castaneda*, 425 F.3d 1213 (9th Cir. 2005); *Adams v. United States (Adams I)*, 255 F.3d 787, 796 (9th Cir. 2001) (holding a district court grant of summary judgment under the Quiet Title Act improper because it lacked jurisdiction pursuant to the expiration of the statute of limitations), *Spirit Lake Tribe v. North Dakota*, 262 F.3d 732 (8th Cir. 2001) (QTA statute of limitations is a jurisdictional bar not an affirmative defense); *Humboldt County v. U.S.*, 684 F.2d 1276 (9th Cir. 1982) (statute of limitations is jurisdictional and cannot be waived).

Park/Park Wash route, a primitive, sandy route that traverses the Paria-Hackberry Wilderness Study Area ("WSA") to noncontroversial paved highways like the Hancock Road.

The State of Utah filed its motion to intervene on February 26, 2010, and after the court granted the motion, filed its complaint on April 29, 2011, alleging that it owned a joint interest in the same routes alleged in Kane County's amended complaint, also pursuant to R.S. 2477.

Ultimately, the United States agreed to recognize the County's R.S. 2477 rights to the Hancock Road and Sand Dune road, as well as portions of the Mill Creek and Bald Knoll roads, and accordingly the court granted summary judgment in Kane County's favor as to these roads on June 21, 2011. (Dkt. 160).

As described below, SUWA recently discovered that the BLM formally notified Kane County on June 3, 1991that it did not recognize the County's R.S. 2477 rights-of-way, and would not recognize them unless the County provided the BLM with certain information to prove the validity of its rights. Other information, including the United States' October 18, 1996 trespass suit against Kane County for the Swallow Park/Park Wash route, further indicates that the County was fully aware its alleged rights were not recognized by the BLM. Thus, the County knew or had reason to know that the BLM claimed an interest adverse to their alleged RS 2477 rights as early as 1991, a full seventeen years before filing this action. Because the statute of limitations under the QTA is twelve years, the county's claims are barred. With respect to the Swallow Park/Park Wash claim, the statute of limitations expired on October 18, 2008, before the County filed its complaint alleging an R.S. 2477 right in this route.

## STATEMENT OF FACTS

I.    <u>Background:  The BLM Wilderness Inventory</u>

4

When Congress enacted the Federal Land Policy and Management Act, 43 U.S.C. § 1701 *et seq.* (1976) ("FLPMA"), it instructed the BLM to inventory lands under its jurisdiction for the presence of wilderness characteristics, as defined by the Wilderness Act of 1964.  43 U.S.C. § 1782(c); *Utah v. Babbitt*, 137 F.3d 1193, 1197-98 (10th Cir. 1998).  Wilderness characteristics are described in the Wilderness Act as "an area where the earth and its community of life are untrammeled by man . . . an area of undeveloped Federal land retaining its primeval character and influence, without permanent improvements or human habitation."  Wilderness Act, 16 U.S.C. § 1131(c). One of the defining elements of wilderness eligibility is the lack of roads. FLPMA, 43 U.S.C. § 1782(a); *Babbitt,* 137 F.3d at 1198.

The BLM conducted an inventory of its wilderness-eligible lands using the criteria provided in the Wilderness Act, FLPMA and an internal document known as the Wilderness Inventory Handbook.  Areas of "roadless" lands 5,000 acres or greater in size were evaluated to determine whether they possessed wilderness character as defined by the Wilderness Act.  *See Babbitt*, 137 F.3d at 1198 (BLM to review certain "roadless areas of five thousand acres or more").  Lands that BLM identified as having wilderness were ultimately designated as Wilderness Study Areas ("WSAs") and were from that point on to be protected from development, "unimpaired," in their natural condition.  *See* Anderson, Michael, America's Unprotected Wilderness, 76 Denv. U. L. Rev. 413, 426-27 (1999) (describing BLM's wilderness review).

In Utah, the BLM began the inventory process in 1979 by publishing a notice in the Federal Register as well as holding a series of public hearings around the state, including in Kane County, Utah.  *Babbitt,* 137 F.3d at 1198-99.  In November 1980, after no less than 28 public hearings in Utah, other opportunities for public comment, as well as individual meetings with

5

Kane County commissioners, the BLM published its Final Wilderness Inventory Decision, designating approximately 2.5 million acres of BLM lands in Utah as WSAs. 45 Fed. Reg. 75,602 (Nov. 14, 1980). The BLM specifically identified the Paria-Hackberry WSA in this notice and since 1980 - for 31 years - has managed the WSA under FLPMA's nonimpairment standard.[2] *Id*. at 75,603. The Swallow Park/Park Wash route traverses the Paria-Hackberry WSA.

On April 11, 1977, shortly after the BLM wilderness inventory began, the Kane County Commission met with Richard Fagan of the BLM. As the minutes of that meeting reflect:

> Richard Fagan of BLM came in to give the Commission procedures to obtain highway rights-of-way from BLM. He also told the Commission to be sure that all title plats are up to date with all County Roads on them and showing that they were maintained by the County before the Organic Act was passed [and R.S. 2477 was repealed].

(Copies of the cited commission meeting minutes are attached in chronological order hereto as Exhibit A, and referred to herein as "Minutes." [3]) Thus, the BLM clearly indicated to the County as early as 1977 that the BLM would require certain "procedures" for the county to obtain rights-of-way from the BLM.

With the prospect of the BLM wilderness inventory, and in the wake of FLPMA's passage and repeal of R.S. 2477 and BLM "procedures" for acquiring rights of way across public lands, Kane County began to focus on identifying and mapping their roads. *See* Minutes, Jan. 10, 1977 (discussing need to number all county roads and the possibility of putting them on a map); Minutes, Oct. 19, 1977 (commission hiring help to make maps showing all roads in the county that can be seen in an aerial photograph); Minutes, Dec. 21,

---

[2] The BLM published a supplemental public notice on March 3, 1981 which again identified the Paria-Hackberry as a WSA. 46 Fed.Reg. 15086-01.

[3] The Minutes are admissible under Fed. Rules of Evidence 201 (judicial notice of adjudicative facts); 801(d)(2) (admission by party-opponent); 803(8) (public records and reports).

1977 (commission discussing the county B Roads system and the public access roads that were in the county as of January 1, 1976); Minutes, Mar. 13, 1978 (commission reviewing maps showing all the county roads on the B road and passing resolution adopting the map); Minutes, Nov. 17, 1979 and Dec. 26, 1979 (commission discussing ongoing work to plot the Class D road system). As the Minutes demonstrate, Kane County was aware that the WSA designations would affect their authority over roads and travel ways in the county, and they acted accordingly, attempting to document county roads used prior to the enactment of FLMPA and the concurrent repeal of R.S. 2477.

II.     The BLM Specifically Warned Kane County that R.S. 2477 Rights of Way Would Not Be Recognized without a Formal Determination in 1991 – Seventeen Years Before Kane County Filed This Action.

On June 3, 1991, two representatives of the BLM, Verlin Smith and Mike Noel, met with the Kane County Commission and specifically notified them that the BLM would not recognize the county's R.S. 2477 rights of way without a formal determination. This message clearly alerted the county that whatever rights it thought it had pursuant to R.S. 2477 were not recognized by the BLM. The minutes are explicit:

> Verlin Smith, Area Manager, and Mike Noel of the Kanab Office, met with the Commission regarding 2477 determination [sic] on county roads. He explained that 2477 federal land use plans require a determination on county roads[5] which state three items: (1) The date a road was constructed or use was established; (2) A statement that the road is public land has been used by the public for at least ten years and (3) The established width of the road or right of way if recorded. Mr. Smith said he was glad to know the county was working on some of these roads such as Warm Creek which would be essential in the Andalex Coal mine proposal. He said he would send a letter

---

[5] The Tenth Circuit Court of Appeals has since ruled that the BLM is not obligated to determine the validity of county R.S. 2477 rights as part of its planning activities. *Kane County v. Salazar*, 562 F.3d 1077, 1086-87 (2009).

to the Commission requesting the information needed on all county 2477 roads. Commissioner Lopeman assured him the county would respond.[6]

The Commission apparently absorbed the full import of the message that Smith and Noel delivered, as reflected in their subsequent actions. Shortly after the meeting, the Commissioners discussed hiring the Garfield County road engineer to document all the County B and D roads. Meeting Minutes, Aug. 12, 1991.

Later Commission minutes demonstrate that the Commission understood that a notice of quiet title for R.S. 2477 claims was required to begin "the process," and describe the various mapping and other tasks that would be required to pursue the action. Minutes, May 9, 1994. A few weeks later, a road inventory was provided to the Commission for review. Minutes, May 23, 1994. It became clear to the Commission, however, that such an undertaking would commit the county to a "huge" expense and work load:

> County Attorney Todd Macfarlane and Ver Jean explained the huge expense and work that we face. Ver Jean pointed out that Washington County has spent $100,000.00 already. Commissioner Carroll asked if it would be proper to use B & C road funds to pay a person to work on the RS2477 issue in the Recorders office. Ver Jean pointed out that she did not want the additional work in her office. Todd suggested that the Raod Dept. hire the employee. The discussion returned to the huge problems with documenting the road that the County is going to claim under the RS 2477.

Minutes, Dec. 1, 1994.

The following year, perhaps daunted by the significant burden the county would bear if it pursued its R.S. 2477 claims, the County had still failed to file a quiet title action. With no action, the county's attorney, Todd Macfarlane stressed to the commission that he "would like to see the rs2477 [sic] roads quiet title action received more precedence." Minutes, Jan. 9, 1995. In response, two of the commissioners agreed to "discuss it more." *Id.* One month later,

---

[6] Amici have attempted to obtain this exchange of correspondence between the BLM and Kane County from both the BLM and the county but were unsuccessful.

Mr. Macfarlane against asked the commissioners whether they were pursuing the quiet title action.  Minutes, Feb. 13, 1995.  Despite the prodding, the county continued to sit on its hands.

By 1996, despite warnings by the BLM that it would not recognize its claims, and the prodding of its own attorney to pursue the quiet title action, the County was still deliberating about the need to document their R.S. 2477 roads, and had not taken formal action.   Instead, the Commission was, a full seventeen years after BLM began its wilderness inventory, and five years after Mr. Smith and Mr. Noel of the BLM warned that formal R.S. 2477 determinations based on specified information were required, still bogged down, apparently weighing the significant costs of pursuing a quiet title action.  By the time the County finally took action, it was too late.

III.     <u>The United States Filed a Trespass Suit Against Kane County for the Swallow Park/Park Wash Route More than Twelve Years Prior to Kane County's Amended Complaint</u>

Kane County's alleged Swallow Park/Park Wash route has been the subject of controversy since at least 1996, when the county's work on the route (and others) led to a lawsuit by SUWA and other conservation groups.  This route is described in *SUWA v. BLM* as one of the routes that lies within a WSA and within the boundaries of the Grand Staircase – Escalante National Monument.  425 F.3d at 742.  A map of the route from the BLM administrative determinations, ordered by the district court, is attached hereto as Exhibit B and shows it to be the same route alleged in this case.  As the appellate court noted, the BLM "filed cross-claims against the Counties, alleging that their road construction activities constituted trespass and degradation of federal property in violation of FLPMA."  *Id*. at 743. To be precise, the U.S. filed its trespass claim against Kane County for the Swallow Park/Park Wash route on October 18, 1996, about 12 years and twenty-three days before Kane County first alleged that it

owned a right-of-way for the route under R.S. 2477.  *United States v. Kane County*, Case No. 2:96-cv-884DS (case closed and consolidated with *SUWA v. BLM* on Dec. 12, 1996).

## ARGUMENT

The County finally filed its QTA claims here in 2008, a full 28 years after BLM began its wilderness inventory and seventeen years after the fateful Smith/Noel meeting.  The suit is at least five years too late.  With respect to the Swallow Park/Park Wash route, the county missed its filing deadline by twenty-three days.

I.      The Doctrine of Sovereign Immunity.

The United States, as a sovereign, is immune from suit unless it has waived its immunity. *See Dep't of the Army v. Blue Fox, Inc.*, 525 U.S. 255, 260 (1999); United States v. Mitchell, 445 U.S. 535, 538 (1980). "The question whether the United States has waived its sovereign immunity. . . is, in the first instance, a question of subject matter jurisdiction." *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988).  "When the United States consents to be sued, the terms of its waiver of sovereign immunity define the extent of the court's jurisdiction." *United States v. Mottaz*, 476 U.S. 834, 841 (1986).  A court lacks subject matter jurisdiction over a claim against the United States if the United States has not consented to be sued on that claim. *See Harrell v. United States*, 443 F.3d 1231, 1234 (10th Cir. 2006); *Consejo de Desarrollo Economico de Mexicali, A.C.* v. United States, 482 F.3d 1157, 1173 (9th Cir. 2007).

A waiver of sovereign immunity by the United States must be expressed unequivocally, and purported statutory waivers of sovereign immunity are generally not to be liberally construed. *See United States v. Nordic Village, Inc.*, 503 U.S. 30, 33-34 (1992). A plaintiff bears the burden of proving subject matter jurisdiction. *See Aragon v. United States*, 146 F.3d 819, 823 (10th Cir. 1998); *Thomas v. McCombe*, 99 F.3d 352, 353 (9th Cir. 1996).

II.     Quiet Title Act.

The QTA provides a limited waiver of the United States' sovereign immunity in civil actions brought "to adjudicate a disputed title to real property in which the United States claims an interest."  28 U.S.C. § 2409a(a). The Act is the "exclusive means by which adverse claimants [may] challenge the United States' title to real property." *Block v. North Dakota*, 461 U.S. 273, 286 (1983). As a statutory waiver of sovereign immunity, the QTA is to be strictly construed in favor of the United States. *See Block*, 461 U.S. at 275-76; *Humboldt County v. United States*, 684 F.2d 1276, 1280 (9th Cir. 1982).

The QTA's waiver of sovereign immunity is expressly limited by a number of conditions, foremost among them, the twelve-year statute of limitations:

> Any civil action under this section, except for an action brought by a State, shall be barred unless it is commenced within twelve years of the date upon which it accrued. Such action shall be deemed to have accrued on the date the plaintiff or his predecessor in interest knew or should have known of the claim of the United States.

28 U.S.C. 2409a(g).

III.    Kane County's  Claims Are Barred by the QTA's Statute of Limitations

This Court lacks subject matter jurisdiction over the County's claims because it failed to bring these claims within the QTA's twelve-year statute of limitations.  Kane County initially filed this action on April 25, 2008, alleging that it held R.S. 2477 rights-of-way for some of the contested routes, and followed with an amended complaint filed on November 10, 2008, which for the first time alleged that it held an R.S. 2477 for the Swallow Park/Park Wash route.[9]  The

---

[9] The county filed yet another amended complaint on February 20, 2009, with changes that are immaterial to the statute of limitations issue.

applicable date for purposes of the QTA's statute of limitations is therefore either November 10, 1996 or April 25, 1996, depending on whether the route was first alleged in the original or amended complaint. As discussed in detail below, the indisputable facts demonstrate that Kane County and the State "knew or should have known" well before 1996 that the United States claimed an interest to the county routes at issue here.  Accordingly, Kane County's claims for each of these roads are time-barred and exceed the Court's subject matter jurisdiction.

A. Construction of QTA's Statute of Limitations.

1.      *Courts Construe the QTA's Statute of Limitations Narrowly and in Favor of the United States.*

The federal courts have generally held that satisfaction of the QTA's statute of limitations is a jurisdictional prerequisite to a QTA action against the United States. *See Block*, 461 U.S. at 292; *Fidelity Exploration and Prod. Co. v. United States*, 506 F.3d 1182, 1185 (9th Cir. 2007). *But see Wisconsin Valley Improvement Co. v. United States*, 569 F.3d 331, 334 (7th Cir. 2009) (QTA's limitations period was a mandatory element of a QTA claim, rather than a prerequisite to jurisdiction). Since the QTA provides a statutory waiver of sovereign immunity, it is "subject to the rule that 'when Congress attaches conditions to legislation waiving the sovereign immunity of the United States, those conditions must be strictly observed, and exceptions thereto are not to be lightly implied.'" *Fidelity*, 506 F.3d at 1185-86 (quoting *Block,* 461 U.S. at 287); *see also Mottaz*, 476 U.S. at 841; *United States v. Testan*, 424 U.S. 392, 399 (1976). The courts have therefore construed the QTA and its statute of limitations narrowly and in favor of the sovereign. *See Block*, 461 U.S. at 275-76; *Vincent Murphy Chevrolet Co., Inc. v. United States*, 766 F.2d 449, 450-51(10th Cir. 1985); *Humboldt County v. United States,* 684 F.2d 1276, 1280 (9th Cir. 1982).

*2. The Courts Use a Reasonableness Test in Determining When a County*

*Plaintiff "Knew or Should Have Known" of the United States' Claim.*

For most claims, in determining "the date that the plaintiff or his predecessor in interest knew or should have known of the claim of the United States," 28 U.S.C. § 2409a(g), the courts utilize a reasonableness test. "The question is whether the United States' action would have alerted a reasonable landowner that the government claimed an interest in the land." *Shultz v. Dep't of Army*, 886 F.2d 1157, 1160 (9th Cir. 1989). "All that is necessary is a reasonable awareness that the Government claims some interest adverse to the plaintiff's." *Knapp v. United States*, 636 F.2d 279, 283 (10th Cir. 1980); *see also California ex. rel., State Land Comm'n v. Yuba Goldfields, Inc.*, 752 F.2d 393, 397 (9th Cir. 1985); *Amoco Prod. Co. v. United States*, 619 F.2d 1383, 1388 (10th Cir.1980); *Vincent Murphy Chevrolet Co., Inc.*, 766 F.2d at 452; *Park County, Mont. v. United States,* 626 F.2d 718, 721 n.6 (9th Cir. 1980). Knowledge of the claim's full contours is not necessary if there is a reasonable awareness that the United States claims "some" interest adverse to the plaintiff. *North Dakota ex rel. Bd. of Univ. v. Block*, 789 F.2d 1308, 1313 (8th Cir. 1986); *Knapp,* 636 F.2d at 283. "The existence of one uncontroverted instance of notice suffices to trigger the limitations period." *Nevada v. United States*, 731 F.2d 633, 635 (9th Cir. 1984); *see also Park County*, 626 F.2d at 721 (single sign constitutes adequate notice). The statute of limitations cannot be tolled for claims against the United States. *See United States v. Beggerly*, 524 U.S. 38, 48 (1998).

The reasonable awareness standard is met when the plaintiff has any reason to understand that the United States claims an interest adverse to plaintiff's claimed interest. Thus, even constructive notice of a claim of the United States may be sufficient to commence the running of the statute of limitations. *Yuba Goldfields*, 752 F.2d at 396; *Hawaii v. United States*, 676 F.

Supp. 1024, 1032 (D. Hawaii 1988), aff'd, 866 F.2d 313 (9th Cir. 1989). Accrual of a cause of action under the QTA does not require a showing of adversity, nor does it require that the United States' claim be communicated in clear and unambiguous language. *Yuba Goldfields*, 752 F.2d at 396 ("Constructive notice of recorded deeds may commence the running of the limitations period.").

> B.      The Statute of Limitations for the County's Claims was Triggered in 1991 When the BLM Warned the County that it Would Not Recognize the County's R.S. 2477 Claims Without a Formal Determination of Their Validity.

The Kane County Commission minutes recently obtained by SUWA demonstrate that the County became concerned about the continuing viability of its authority over what it believed to be county roads in the wake of Congress's repeal of R.S. 2477 in 1976, and then again as early as the commencement of the BLM wilderness inventory in the late 1970s. During that time, the commissioners expressed the need to document all the county roads and authorized expenditures for mapping and other work toward that end. *Supra* at 5-6.

If the commissioners harbored any doubt about whether the BLM would recognize their R.S. 2477 rights-of-way, it was certainly put to rest on June 3, 1991 when BLM officials met with the commission and expressly warned them that the County would have to provide BLM with specified information and obtain a required "determination" before the BLM would recognize those alleged rights. The required information included the "date the road was constructed or use was established;" a statement that the road had been used for at least ten years; and the established width of the road. Minutes, June 3, 1991.

The County's actions also indicate that it understood the import and significance of the BLM's statement. In response, Commissioner Lopeman "assured [the BLM] the county would

14

respond" to BLM's request for information.  *Id*.  Yet, while the County appeared to move forward in an off-again, off-again fashion, it was clearly concerned about the "huge" expense involved in proving its claims and obtaining the required determination.  The County continued to hem and haw, even as its own attorney urged it twice to give the issue more precedence and pursue the action.  Minutes, Jan. 9, 1995 and Feb. 13, 1995.

Given this history of express notice of BLM's unwillingness to recognize the County's R.S. 2477 claims without specific information from the County and a formal determination, it is clear that the County knew or should have known that the BLM claimed an interest adverse to its own.  "All that is necessary is a reasonable awareness that the Government claims some interest adverse to the plaintiff's." *Knapp v. United States*, 636 F.2d 279, 283 (10th Cir. 1980).  Here, the County certainly had that "reasonable awareness" in 1991 (if not earlier).  As a result, the statute of limitations expired on June 3, 2003, five years before the County filed its action here; as a result, Kane County's suit is time barred.

> C.  The County's R.S. 2477 Claim to the Swallow Park/Park Wash Route is Barred by the Statute of Limitations For Additional Reasons.

As explained above, the County was warned by the BLM as early as 1991 that the BLM would not recognize any of its claimed R.S. 2477 rights-of-way without a formal determination.  In addition, the County was notified that the BLM did not recognize its claimed R.S. 2477 rights with respect to the Swallow Park/Park Wash route specifically.  Thus, Kane County's claim to the Swallow Park/Park Wash route is barred by the statute of limitations because it long had notice of the United States' adverse claim to this particular route through several federal actions.

First, the statute of limitations was triggered for the Swallow Park/Park Wash route, at the latest, when the United States filed its October 18, 1996 trespass claim against the County for

work it had conducted on the route. This action put the County on notice that the United States disputed the County's claimed rights to the route. As a result, the statute of limitations expired at the latest, on October 18, 2008, twenty-three days before the County filed its amended complaint alleging for the first time that it held an R.S. 2477 right-of-way for this route.

Second, the United States triggered the statute of limitations in 1979 when it initiated its wilderness inventory, and no later than 1980 when the BLM published its final decision designating the Paria-Hackberry WSA in the Federal Register. Two district court opinions confirm that the designation of a WSA commences the running of the statute of limitations as to R.S. 2477 claims located in the WSA. In *Southwest Four Wheel Drive Ass'n v. BLM*, 271 F. Supp. 2d 1308, 1312 (D.N.M. 2003), aff'd on other grounds, 363 F. 3d 1069 (10th Cir. 2004), the court ruled that the designation of a WSA encompassing claimed R.S. 2477 rights-of-way triggered the statute of limitations as of the date of the Federal Register publication of the WSA designation because the publication provides notice "that BLM claimed all of the area and did not recognize any alleged rights-of-way." As the United States argued in that case, such publication provides the date by which "Plaintiffs knew or should have known . . . that the United States claimed there were no 'public roads' within the" WSA because "a WSA designation means the United States asserts that the area is roadless." *Sw. Four Wheel Drive*, 271 F. Supp. 2d at 1311.

In *County of Inyo v. U.S. Dep't of Interior*, Case No. CV F-06-1502 AWI DLB, 2008 WL 4468747, at *9-11 (E.D. Cal. Sept. 29, 2008), the court similarly concluded that a WSA designation triggered the QTA's statute of limitations because the designation limited plaintiff Inyo County's ability to enhance or upgrade its claimed rights-of-way for four dirt roads. In so ruling, the court rejected the analysis in *Southwest Four Wheel Drive*, reasoning that

16

classification of an area as "roadless" is not sufficient in and of itself to start the running of the statute of limitations because such classification does not necessarily preclude any desired use or improvement of the claimed rights-of-way. *County of Inyo*, at *9. The court nonetheless reached the same result as *Southwest,* holding that the "BLM's duty under FLPMA to prevent degradation of existing wilderness values resulted in an impairment of Plaintiff's ability to enhance or up-grade any of its rights of way for a period of about 12 years." *Id.* at *11.

By these same two rationales, the inclusion of the Swallow Park/Park Wash in the Paria-Hackberry WSA was sufficient to trigger the statute of limitations.  Both courts recognize that WSA designation is the critical point for determining whether a County has notice.  As the court in *Southwest Four Wheel Drive* ruled, the designation provided notice that the BLM regarded the area as "roadless." Alternately, as the court in *County of Inyo* ruled, the designation had the effect of impairing the plaintiff's ability to improve this portion of the claimed right-of-way as a result of FLPMA's mandate that the BLM "prevent degradation of existing wilderness values" in the WSA. *County of Inyo* at *11. Under either line of reasoning, the WSA designation was sufficient to make the County reasonably aware of the United States' claim, as the publication of the designation in the Federal Register apprised the County of the claim. *See Friends of Sierra R.R., Inc.* v. I.C.C., 881 F.2d 663, 667-68 (9th Cir. 1989) ("Publication in the Federal Register is legally sufficient notice to all interested or affected persons regardless of actual knowledge or hardship resulting from ignorance.").

This court ruled on a similar issue in an unreported case, *Millard County v. United States*, Civ. No. 93-C-591J (Mem. Op. and Order Dec. 4, 1995).  There, the court held that the designation of the area surrounding the claimed R.S. 2477 highway as a WSA did not *necessarily* trigger the statute of limitations.  *Id*. at n. 9.   The *Millard County* case, however,

holds only that the WSA designation alone, without additional evidence that the county actually knew or should have known that the BLM claimed some sort of adverse interest, did not trigger the statute of limitations. This reading makes sense given the emphasis that the court placed on the fatal consequence of inquiry notice in that case, as evidenced by the BLM's own work on the claimed road, the BLM's action on a right-of-way application by a third party, and a road maintenance agreement with the county identifying the route as a "BLM road." *Id*. at 10-11.

While SUWA asserts that despite *Millard County*, WSA designation is sufficient to trigger the statute of limitations for the reasons discussed in *Southwest Four Wheel Drive* and *Inyo County*, in this case, the WSA designation provides the context in which Kane County's actions to shore up their R.S. 2477 claims, were conducted. The County undertook these actions in response to the WSA designations because it knew that those designations would negatively impact whatever rights they may have held under R.S. 2477. *Supra* at 5-6. These actions, in addition to the WSA designation, combine to show that the county had actual or inquiry notice. Moreover, as in *Millard County*, additional events put Kane County on notice that the BLM claimed an interest in the route that was adverse to the County's, including the June 3, 1991 meeting in which BLM officials expressly notified the County that it would not recognize their R.S. 2477 claims anywhere in the County, including in the WSAs, without the County's provision of specific information and a formal determination.

## CONCLUSION

For the foregoing reasons, amicus respectfully requests this Court dismiss the County's R.S. 2477 claims because they are barred by the Quiet Title Act's statute of limitations.

Respectfully submitted December 30, 2011.

s/ Heidi J. McIntosh
Heidi J. McIntosh

18

Steven H.M. Bloch
Southern Utah Wilderness Alliance
Attorneys for Amicus

## CERTIFICATE OF SERVICE

I hereby certify that on December 30, 2011, the undersigned electronically transmitted the attached **AMICUS BRIEF OF SOUTHERN UTAH WILDERNESS ALLIANCE** to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Romney S. Philpott
Joanna K. Brinkman
Environment & Natural Resources Division
United States Department of Justice
P.O. Box 663
Washington, D.C. 20044-0663

John K. Mangum
United States Attorney's Office
185 South State Street, Suite 400
Salt Lake City, UT 84111

James E. Karkut
Office of the Regional Solicitor
Department of the Interior
125 S. State Street, Suite 6201
Salt Lake City, UT 84138

HOLLAND & HART LLP
Shawn T. Welch, #7113
Tamara L. Stevenson, #13471
Ryan R. Jibson, #12566
222 S. Main Street, Suite 2200
Salt Lake City, UT 84101

Thomas K. Snodgrass
Environment & Natural Resources Division
United States Department of Justice
999 18th St. South Terrace Ste. 370
Denver, Colorado 80202

Harry Souvall
Anthony L. Rampton
UTAH ATTORNEY GENERAL
5110 State Office Building
P.O. Box 142477
Salt Lake City, Utah  84114-2477

_/s/_____
Heidi J. McIntosh

20