Shawn T. Welch (7113)
Richard D. Flint (7525)
Michelle Quist (13559)
HOLLAND & HART LLP
222 South Main, Suite 2200
Salt Lake City, UT 84101
Telephone: 801-799-5800
stwelch@hollandhart.com
rdflint@hollandhart.com
mlquist@hollandhart.com

*Attorneys for Kane County, Utah*

Anthony L. Rampton (2681)
Kathy A.F. Davis (4022)
K. Tess Davis (15831)
Assistant Attorneys General
SEAN D. REYES (7969)
Utah Attorney General
1594 W. North Temple, Ste. 300
Salt Lake City, UT 84116
Telephone: (801) 537-9801
arampton@agutah.gov
kathydavis@agutah.gov
kaitlindavis@agutah.gov

*Attorneys for the State of Utah*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| KANE COUNTY (1), UTAH a Utah political subdivision,<br><br>    Plaintiff,<br><br>STATE OF UTAH,<br><br>    Plaintiff-Intervenor,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>    Defendant,<br><br>SOUTHERN UTAH WILDERNESS ALLIANCE and THE WILDERNESS SOCIETY,<br><br>    Defendant-Intervenors. | **THE STATE OF UTAH'S AND KANE COUNTY, UTAH'S POST-TRIAL BRIEF**<br><br>Case No. 2:08-cv-00315-CW<br><br>Judge Clark Waddoups |

## TABLE OF CONTENTS

**Page No(s).**

**TABLE OF AUTHORITIES** ................................................................................................... ii

1. Background. ........................................................................................................ 1

2. Introduction. ........................................................................................................ 2

3. The BLM Has No Authority To Decide The Scope Of R.S. 2477 Rights-of-Way. .................................................................................................................. 3

4. Pre-1976 Traditional Uses Of The Road ............................................................. 7

5. The Proper Scope Is What Is Reasonable And Necessary In Light Of Pre-1976 Use And The Exigencies Of Increased Travel. ............................................... 9

6. The Court Should Now Decide That The Skutumpah Road Project Is Reasonable And Necessary In Light Of Pre-1976 Uses And Therefore Within The Scope Of The R.S. 2477 Right-of-Way. ............................................ 13

# TABLE OF AUTHORITIES

**Page No(s).**

### CASES

*Big Cottonwood Tanner Ditch Co. v. Moyle*,
   174 P.2d 148 (1946) ..........................................................................................................15

*Burrows v. Guest*,
   12 P. 847 (Utah 1886) ..................................................................................................12, 15

*Conatser v. Johnson*,
   2008 UT 48, 194 P.3d 897 (Utah 2008) ............................................................................10

*Kane Cnty., Utah (1) v. United States*,
   772 F.3d 1205 (10th Cir. 2014) ................................................................................. passim

*Kane County, Utah v. United States*,
   934 F.Supp.2d 1344 (D. Utah 2013) ....................................................................................1

*Kane County, Utah v. United States*,
   No. 2:08-cv-00315 CW, 2011 WL 2489819 (D. Utah June 21, 2011) .............................1, 8

*Kane County, Utah v. United States*,
   No. 2:08-cv-00315 CW, 2013 WL 1180764 (D. Utah Mar. 20, 2013) ...................1, 2, 8, 13

*S. Utah Wilderness All. v. United States DOI*,
   44 F.4th 1264 (10th Cir. 2022) ............................................................................................7

*Sierra Club v. Hodel*,
   675 F. Supp. 594 (D. Utah 1987) ................................................................................ passim

*Sierra Club v. Hodel*,
   848 F.2d 1068 (10th Cir. 1988) ................................................................................... passim

*SRB Inv. Co. v. Spencer*,
   2020 UT 23 ..........................................................................................................................9

*SUWA*,
   425 F.3d 735 (10th Cir. 2005) .................................................................................... passim

*United States v. Wells*,
   873 F.3d 1241 (10th Cir. 2017) ...........................................................................................9

*Whitesides v. Green*,
  44 P. 1032 (1896) .................................................................................................... 10

## STATUTES

28 U.S.C. § 2409a ........................................................................................................ 7

43 U.S.C. § 932 (repealed 1976) ............................................................................ 1, 6

Federal Land Policy and Management Act of 1976 ..................................................... 4

Omnibus Consolidated Appropriations Act, 1997, Pub. L. No. 104-208, 110 Stat. 3009
  (1996) ........................................................................................................................ 6

## OTHER AUTHORITIES

51 Fed. Reg. 6542 (Feb. 25, 1986) ............................................................................... 4

59 Fed. Reg. 39216 (August 1, 1994) ........................................................................... 5

R.S. 2477 .............................................................................................................. passim

Plaintiff Kane County, Utah ("Kane County") and Plaintiff-Intervenor the State of Utah ("State") submit this Post-Trial Brief following the three-day December 2022 remand trial.

**1.     Background.**

Four earlier decisions in this lawsuit bear on the remaining issues before the Court. First, in 2011 the Court granted partial summary judgment to the State and Kane County and confirmed title to a number of R.S. 2477[1] rights-of-way, including the K5000 Skutumpah Road. *See Kane County, Utah v. United States*, No. 2:08-cv-00315 CW, 2011 WL 2489819 (D. Utah June 21, 2011) ("*Kane County MSJ*"). The Court did not decide title to certain roads on summary judgment, and "issues pertaining to scope [were] likewise reserved for trial." *Id*. at * 8.

Following a nine-day bench trial in August 2011 the Court issued two decisions in 2013. In *Kane County, Utah v. United States*, 934 F.Supp.2d 1344 (D. Utah 2013) ("*Kane County Juris.*"), the Court held that it had subject matter jurisdiction to quiet title to the 15 roads claimed in the lawsuit. And in *Kane County, Utah v. United States*, No. 2:08-cv-00315 CW, 2013 WL 1180764 (D. Utah Mar. 20, 2013) ("*Kane County Merits*"), the Court issued its decision confirming the State and Kane County's title (validity and scope) to 12 of the 15 roads in the lawsuit. *Id*. at ** 64-66.

The parties appealed various portions of the Court's 2013 decisions, which were ultimately resolved by the Tenth Circuit Court of Appeals as reported in *Kane Cnty., Utah (1) v. United States*, 772 F.3d 1205 (10th Cir. 2014) ("*Kane County (1)*"). As relevant here, the Tenth

---

[1] R.S. 2477 provides that the "right of way for the construction of highways over public lands, not reserved for public uses, is hereby granted." Section 8 of the Act of July 26, 1866, ch. 262, 14 Stat. 251, 253, later codified as Revised Statutes § 2477 and then as 43 U.S.C. § 932 (repealed 1976).

Circuit remanded for this Court to make new findings of the scope of the K5000 Skutumpah Road, the K4360 Swallow Park/Park Wash Road,[2] and the K4370 North Swag Road. *Id*. at 1223. In *Kane County Merits*, this Court found a 66-foot right-of-way for the Skutumpah Road (id. at * 64) and a 24-foot right-of-way for the Swallow Park/Park Wash and North Swag Roads. *Id*. at * 65. The Tenth Circuit did not necessarily fault the widths found by the Court, rather, it remanded for the Court to set the widths based "on uses that were established as of 1976" and not to allow, in advance, "room for unspecified future improvements." *Id*.

**2.      Introduction.**

Some of the issues now before the Court are issues of first impression. For example, this is the first known lawsuit where a proposed road improvement project is before a federal court on an adjudicated R.S. 2477 right-of-way. The existence of an adjudicated right-of-way is significant because recent R.S. 2477 caselaw has become somewhat of an echo chamber, where excerpts of past administrative decisions involving unadjudicated roads are quoted or paraphrased without reference to the real property law at issue. The concept of a "determination" has taken on a life of its own.

Moreover, this lawsuit presents the novel question of how to protect the interests of the State and Kane County, the owners of the dominant R.S. 2477 right-of-way estate, when the owner of the servient estate (the United States[3]) directly causes a material increase in the burden

---

[2] The United States did not contest title to the 24-foot right-of-way for the Class B section of the Swallow Park Road. *Id*. at 1223, n.4. Thus, only the Class D section of the Swallow Park/Park Wash road remains before the Court.

[3] Here, the relevant agencies are the Department of the Interior ("DOI") and the Bureau of Land Management ("BLM").

on the right-of-way, but will not compensate the State and Kane County, nor fix the problems. In short, the United States has decided to prevent the State and Kane County from fixing the significant public safety and environmental problems of its own making. It is remarkable that the relevant BLM managers freely admitted in open court that there are significant public safety problems and environmental impacts that the State and Kane County stand ready to fix via the Skutumpah Road Project[4], but higher ups elected to block the Project—a Project that the local managers agree is reasonable.

Additionally, the United States and the Southern Utah Wilderness Alliance ("SUWA") are now rehashing their prior attempts to create an administrative process to resolve R.S. 2477 title—a process that both Congress and the Tenth Circuit have squarely rejected. By both specific statute and settled Tenth Circuit law, the BLM lacks authority to adjudicate title to an R.S. 2477 right-of-way. Nevertheless, the BLM presumed that it had the right to decide whether the Skutumpah Road Project fell within the scope of the State and Kane County's R.S. 2477 right-of-way. Having decided that the Project is not "necessary," both the BLM and SUWA now contend that a challenge to that decision must by-pass the Court and be taken as an administrative appeal limited to the evidence in the record before the agency. *See* Final Pretrial Order, Dkt. 384 ("FPO") at 4-5. Both the BLM and SUWA tried this before and failed. *See generally*, *SUWA*, 425 F.3d 735 (10th Cir. 2005).

**3.      The BLM Has No Authority To Decide The Scope Of R.S. 2477 Rights-of-Way.**

---

[4] The Skutumpah Road Project is shown in Pl. Ex. 417R and was more fully described by the testimony of the State's and Kane County's expert witness, Mr. Lyndon Friant. Tr. 244-299.

3

The State and Kane County believe it best to address the BLM's history with R.S. 2477 so that the Court can refresh its understanding of the basis for the older and more recent case law at issue. This is especially important because, as conceded at trial, the BLM's Paria District Manager Mr. Harry Barber was directed to sign a decision document and letter in November of 2022 purporting to make a "Reasonable and Necessary Determination" that the Skutumpah Road Project was reasonable but not necessary. *See* Pl. Exs. P420R, P421R. Mr. Barber is a wildlife biologist who had never been involved in any similar type of decision, and he merely signed the document others gave to him. Trial Transcript ("Tr.") 302 (wildlife biologist), 346 ("I was told . . . So I signed it."). The BLM and SUWA now contend that a challenge to that decision must be taken away from this Court as an administrative appeal limited to the evidence in the record before the agency. *See* Final Pretrial Order, Dkt. 384 ("FPO") at 4-5.

From 1866 to about 1994, the United States (including the General Land Office, DOI and BLM) adopted regulations and represented to courts that it had no authority to adjudicate R.S. 2477 rights-of-way. In 1986, DOI published regulations stating rights-of-way granted prior to the Federal Land Policy and Management Act of 1976 ("FLPMA), such as under R.S. 2477, should not be diminished[5] and DOI policy adopted in 1988 required prior consideration of R.S. 2477 rights-of-way when they might be affected by land management actions. Pl. Ex. 212 (Sec. Interior D. Hodel Policy). To implement the "Hodel Policy" and as the BLM began land management planning in Utah, the BLM adopted IM UT 91-325 and directed the BLM to make "administrative determinations" of R.S. 2477 rights-of-way "when the presence or absence of a

---

[5] Principles and Procedures for Rights of Way Granted Prior to October 21, 1976, 51 Fed. Reg. 6542 (Feb. 25, 1986).

4

R.S. 2477 right-of-way is a factor in land use decisions." Pl. Ex. 150. These non-binding determinations were for its own, internal planning purposes. *See SUWA*, 425 F.3d at 757, n.12 (compiling IBLA cases).

In the mid-1980s, the BLM conducted an administrative determination and agreed that Garfield County, Utah owned an R.S. 2477 right-of-way for the Burr Trail Road, and that the county's proposed improvements were within the scope of its right-of-way. *See Sierra Club v. Hodel*, 675 F. Supp. 594, 608 (D. Utah 1987). The BLM later defended its administrative determination that the Burr Trail Road qualified as an R.S. 2477 right-of-way before the Tenth Circuit. *See Sierra Club v. Hodel*, 848 F.2d 1068, 1081 (10th Cir. 1988), *overruled on other grounds by Village of Los Ranchos De Albuquerque v. Marsh*, 956 F.2d 970, 971 (10th Cir. 1992) (en banc).

As confirmed by *Hodel*, the initial determination of whether "activity falls within an established right-of-way is to be made by the BLM and not the Court." 848 F.2d at 1084 (citation omitted). For years, the BLM continued to state that administrative determinations were not binding and were for its "internal land-use planning purposes." *SUWA*, 425 F.3d at 757 (quotation marks and citation omitted).

Then the DOI, under Secretary of the Interior Bruce Babbitt (1993 – 2001), changed course. In 1994, the DOI proposed new regulations that, for the first time, would give the DOI the authority to adjudicate R.S. 2477 rights-of-way. *See* Revised Statute 2477 Rights-of-Way, 59 Fed. Reg. 39216 (August 1, 1994). Congress, which had preserved and protected R.S. 2477 rights-of-way as valid existing rights under FLPMA, quickly stepped in to block the DOI's efforts.

> No final rule or regulation of any agency of the Federal Government pertaining to the recognition, management, or validity of a right-of-way pursuant to Revised Statute 2477 (43 U.S.C. [§] 932) shall take effect unless expressly authorized by an Act of Congress subsequent to the date of enactment of this Act [Sept. 30, 1996].

U.S. Department of the Interior and Related Agencies' Appropriations Act, 1997, § 108, enacted by the Omnibus Consolidated Appropriations Act, 1997, Pub. L. No. 104-208, 110 Stat. 3009 (1996).

These two statutes, FLPMA and § 108, confirm the congressional intent to preserve and protect R.S. 2477 rights-of-way.

However, the BLM and SUWA were separately pursuing trespass claims against, *inter alia*, Kane County, including on the Skutumpah and North Swag roads. The BLM lost its summary attempt to find Kane County liable for trespass based solely on the fact that the county had not first received the BLM's permission to grade the roads. *SUWA*, 425 F.3d at 743. The "validity and scope of the claimed rights-of-way [were the] key to resolving the trespass claims." *Id*. (alteration original; quotation marks omitted). Still, the district court in the trespass lawsuit followed Tenth Circuit precedent to allow the BLM to make an initial determination of whether the grading fell within an existing right of way, and "referred the issue of validity and scope of the claimed rights-of-way to the BLM." *Id*.

Later, on appeal to the Tenth Circuit, the BLM and SUWA argued that the BLM's administrative determinations were binding decisions within the agency's jurisdiction. The Tenth Circuit wholly rejected that argument and held that the agencies of the United States have no authority to adjudicate the existence or scope of R.S. 2477 rights-of-way. "Title to an R.S. 2477 right of way . . . passes without any procedural formalities and without any agency involvement." *Id*. at 753. In purporting to adjudicate the validity and scope of the R.S. 2477

6

rights-of-way, the BLM wrongfully usurped the "judicial" function of "adjudicat[ing] legal title." *Id*. at 752.

The continuing vitality of *SUWA* –that the BLM has no authority to adjudicate title—was recently reiterated in *S. Utah Wilderness All. v. United States DOI*, 44 F.4th 1264 (10th Cir. 2022). The BLM lacks "the authority to make binding determinations on R.S. 2477 rights-of-way [because] such decisions are a judicial, not an executive, function." *Id*. at 1268 (quotation marks and citation omitted). "Thus, when a claimant seeks to conclusively establish title to an R.S. 2477 right-of-way, that party must sue under the Quiet Title Act, 28 U.S.C. § 2409a" ("QTA"). *Id*.

Thus, the BLM's "determination" that the Skutumpah Road Project is not necessary is not enforceable, nor is it a matter of administrative appeal. The parties have resorted to the court under the QTA for the judicial function of deciding a title dispute. *See SUWA*, 425 F.3d at 748 ("parties may resort to the courts.").

As for the BLM's and SUWA's argument that this Court's review of the BLM's determination is limited to the record before the agency, that argument is similarly rejected by Tenth Circuit precedent. In remanding *SUWA*, the Tenth Circuit confirmed that Kane County could "introduce evidence relevant to the question" of title. *Id*. at 749. "On remand, the parties are permitted to introduce evidence regarding the validity and scope of the claims, including, but not limited to, the evidence contained in the administrative record before the BLM." *Id*. at 758.

### 4. Pre-1976 Traditional Uses Of The Road

The Tenth Circuit remanded for this Court to decide the scope of three adjudicated rights-of-way as reasonable and necessary "in light of pre-1976 uses." *Kane Cnty. (1)*, 772 F.3d at

7

1223. The Tenth Circuit noted that *Hodel* found the "improvement of the Burr Trail was 'reasonable and necessary to ensure safe travel' in light of the pre-1976 uses of livestock transportation, oil, water and mineral development and tourism." *Kane Cnty. (1)*, 772 F.3d at 1223, quoting *Hodel*, 848 F.2d at 1084.

      This Court's summary judgment and merits decisions extensively recounted all the many pre-1976 uses of the three rights-of-way (see *Kane County MSJ*, at ** 2-3, 6-7; *Kane County Merits*, at ** 9-13, 20-29), and the State and Kane County have detailed those pre-1976 traditional uses in their proposed Findings of Fact and Conclusions of Law. These uses will not be repeated but are incorporated herein.

      As shown therein, the Swallow Park/Park Wash and North Swag roads were used for ranching, gathering firewood, cutting cedar fence posts, hunting for deer and coyotes, picking pine nuts, sight-seeing, searching for artifacts, exploring, rock hunting, taking photographs (recreation), and as a connection between communities and private property. The Swallow Park/Park Wash Road was additionally used for logging prior to 1976.

      The pre-1976 uses of the Skutumpah Road were more extensive and included access for logging, drill rigs, semis, and other mining equipment. Moreover, travel on the Mill Creek, Oak Canyon and Tenny Creek roads, and the travel going east from Thompson Wash on the Bald Knoll Road, necessarily crossed the Skutumpah Road's southern end (the Project area). As shown in Pl. Exs. 191 and 199, the trucks used to haul cattle and cedar posts were much larger than today's normal pickup trucks.

      These are the same uses identified as traditional uses of the Burr Trail in *Hodel*. "The trail has hosted a variety of uses: during the late 1800s and early 1900s to drive cattle, sheep and

horses to market; around 1918 to facilitate oil exploration; and since the 1930s for various transportation, emergency, mineral, agricultural, economic development, and tourist needs. Hodel, 848 F.2d at 1073.

As a matter of law, the concept of a "traditional use" of a right-of-way is simply a tool to consider the type of use. For example, whether an easement or right-of-way was established for foot travel, wagon travel, or, as here, general public highway motor vehicle travel. The legal purpose of identifying the pre-1976 uses is not to consider the subjective intent of the traveler, but to help analyze the burden on the servient estate. "Rights-of-way are a species of easements and are subject to the principles that govern the scope of easements." *Hodel*, 848 F.2d at 1083. Under Utah law, the subjective purpose of the user of an easement does not define or limit its scope. "Although, in determining the scope of a prescriptive easement, courts may consider a wide variety of factors, the subjective purpose for which a prescriptive easement is used should be considered only to the extent it is helpful *in determining the nature of the burden historically placed on the servient estate*." *SRB Inv. Co. v. Spencer*, 2020 UT 23, ¶ 24; 463 P.3d 654 (emphasis added).

All three of the rights-of-way before the Court were granted by Congress, accepted through maintenance or usage, and traditionally used for their intended purpose of general public motor vehicle travel and economic development. *See Hodel*, 848 F.2d at 1084. [T]ourism is a form of economic development." *Hodel*, 675 F. Supp. at 608.

5. **The Proper Scope Is What Is Reasonable And Necessary In Light Of Pre-1976 Use And The Exigencies Of Increased Travel.**

"[I]n the context of the QTA, the existence and scope of a right-of-way or, more generally, an easement, is an issue for the judge." *United States v. Wells*, 873 F.3d 1241, 1262

9

n.10 (10th Cir. 2017), citing *Conatser v. Johnson*, 2008 UT 48, 194 P.3d 897, 900 (Utah 2008) ("Determining the scope of an easement is a question of law.").

"The width of the road, however, is not limited to the actual beaten path as of October 21, 1976." *Kane Cnty. (1)*, 772 F.3d at 1223 (citations omitted). "Courts look to state law to determine the appropriate width, and under Utah law, the width of a public road is that which is reasonable and necessary under all the facts and circumstances. *Id*. (citations and quotation marks omitted). "Thus, the road can be widened to meet the exigencies of increased travel, including where necessary to ensure safety." *Id*. (citations and quotation marks omitted).

Here, the State and Kane County have shown that an 18-foot right-of-way for the Swallow Park/Park Wash and North Swag roads meets Utah's legal requirements. Under Utah law, public highways must be "wide enough to allow travelers to pass each other." *Whitesides v. Green*, 44 P. 1032, 1033 (1896). This does not necessarily mean to be able to "pass" each other at speed, but to pass each other in the sense of allowing one vehicle to get past an oncoming vehicle. The Swallow Park/Park Wash and North Swag roads are single lane roads, with a 10 to 12-foot traveling surface. The Kane County road grader is eight and one-half feet wide and common trucks are approximately seven feet wide, mirror to mirror. The Swallow Park/Park Wash and North Swag roads traverse challenging terrain that requires more maneuvering than a normal road. The AASHTO minimum right-of-way for a low volume, rural road, is 18 feet. Accordingly, the Court should find that an 18-foot right-of-way for the Swallow Park/Park Wash and North Swag roads is reasonable and necessary in light of the pre-1976 traditional uses by motor vehicles.

The section of the Skutumpah Road, north of the Project, is a higher speed thoroughfare. It has historically had a substantial amount of travel and it has been regularly maintained by Kane County as a Class B road since 1967. The road's traveled surface has been maintained at roughly 28 feet wide on the southern end, and to 24 feet on the north. Kane County has installed numerous culverts and drainage runouts to preserve the surface of the road, has repaired and installed bridges where needed, and has historically gathered fill material from the borrow ditch and adjacent land. When needed, Kane County has brushed vegetation back from beyond the borrow ditch.

The Skutumpah Road (dating before 1877) has a similar history to the 1880 Burr Trail. In considering the proper scope of the right-of-way, the Court can consider the following:

> The district court determined that constructing a two-lane gravel road, with adjoining culverts and ditches, is reasonable and necessary to assure safe travel on the Burr Trail. The court condoned the proposed drainage ditches and culverts as sound engineering practice and hence part of the reasonable and necessary use. Even allowing for these drainage ditches, the project falls within the right-of-way as prescribed by Utah law. The district court further found that the project is entirely consistent with the historic physical alignment of the road. The proposed deviations [from the established roadway] are minor in relation to the realignments which have been made in the past in response to flooding and rock slides. Finally, the intended use for the proposed road--the promotion of economic development--was found to square with the Burr Trail's historic uses, including service as a vital link between the county's major centers of activity.

*Sierra Club v. Hodel*, 848 F.2d 1068, 1084 (10th Cir. 1988) (citation and quotation marks omitted).

Beyond being a major thoroughfare between cities, the Skutumpah Road is connected to the Millcreek Road, and also serves traffic from the Oak Canyon, Tenny Creek, and Bald Knoll roads. These roads have adjudicated 50-foot rights-of-way. "In determining the extent of the dedication, all the circumstances may be considered, - the width of the highways in the vicinity

11

of the land in question, the width of highways in a system of which the one in controversy forms a part, any circumstances of recognition by the owner of the fee and the public of definite and fixed limits." *Burrows v. Guest*, 12 P. 847, 851 (Utah 1886). "It is but matter of common understanding and experience that it is desirable and usual that streets and highways should be and are of uniform width."

Accordingly, the Court should find that a 50-foot right-of-way for the north section of the Skutumpah Road is reasonable and necessary in light of its pre-1976 traditional uses and the exigencies of existing traffic.

The BLM and SUWA contend that the State and Kane County must first prove, by clear and convincing evidence, the scope of each of the three rights-of-way as of October 21, 1976. FPO at 4-5. The BLM contends that the State and Kane County must then separately prove that any improvements to the road are reasonable and necessary in light of the pre-1976 uses. FPO at 4. SUWA agrees but takes it a step further. SUWA contends the State and Kane County must first establish the scope of the three rights-of-way as of October 21, 1976, and then "any improvements after October 21, 1976 must first be reviewed by BLM" for an administrative determination. FPO at 4-5. In the absence of an administrative determination as to each post-1976 improvement, "this Court cannot presently determine if any improvements made to the three rights-of-way after October 21, 1976 are part of the scope of the rights-of-way." *Id*. at 5.

The BLM's argument is wrong, and SUWA's lacks merit. The Tenth Circuit remanded to this Court to determine the current scope of the three rights-of-way, not to venture through some type of judicially supervised historical tour involving "matters no one had reason to document at the time." *SUWA*, 425 F.3d at 742. There is no evidence that the BLM disproved of any of Kane

County's roadwork, save for the realignments related to the trespass lawsuit, and those realignments were not challenged on appeal and are settled by the law of the case. *See Kane County Merits*, \*\* 59-62.

There is no reason to go back and try to re-create the wheel from 1976 forward when there is a better approach that will conserve judicial resources and hew to the law. The Court, having reviewed the extensive evidence adduced in two trials and with the benefit of two site visits, should decide whether the existing features of the rights-of-way are reasonable and necessary in light of the pre-1976 traditional uses and the exigencies of existing travel. That approach will secure the right result without wasting resources.

**6.     The Court Should Now Decide That The Skutumpah Road Project Is Reasonable And Necessary In Light Of Pre-1976 Uses And Therefore Within The Scope Of The R.S. 2477 Right-of-Way.**

The Skutumpah Road does "not have to be maintained in precisely the same condition it was in on October 21, 1976; rather, it [can] be improved as necessary to meet the exigencies of increased travel, so long as this [is] done in the light of traditional uses to which the right-of-way was put as of repeal of [FLPMA] in 1976." *SUWA*, 425 F.3d at 746. "[T]he right-of-way holder may sometimes be entitled to change the character of the roadway when needed to accommodate traditional uses." *Id*. at 748.

The State and Kane County proved that the Skutumpah Road Project is needed desperately to provide for public safety and to reduce the impacts to the federal land from repeated grading and fugitive dust. The BLM officials that testified at trial agreed that there is a safety problem, from both washboarding and dust, and that Kane County is struggling with

13

ongoing maintenance on the south end of the road. The Project will solve the recognized problems on the Skutumpah Road.

In the past, the BLM supported a project with an almost identical need. To paraphrase the district court decision in *Hodel*, it is evident from the testimony of Mr. Friant, "the project engineer, and regular users of the trail that the roadway as it now exists is unsafe for the increasing travel." *Hodel*, 675 F. Supp. at 607. "[F]rom an engineering standpoint, none of the proposed construction is unreasonable or unwarranted." *Id*. Mr. Friant "also testified that the proposed construction is minimally necessary to meet the standards set by the American Association of State Highway and Transportation Officials (AASHTO) for a road of this type." *Id*.

Moreover, it is undisputed that the United States' creation of the Grand Staircase-Escalante National Monument ("Monument") in 1996 dramatically increased travel on the Skutumpah Road. Travel on the southern section increased four-fold from 1996 to 2021. The United States' actions, publications, maps, websites and installation of new trailheads made the Monument an international attraction. The resultant increase in traffic makes it patently unreasonable for the BLM to prevent Kane County from fixing the problems.

Once again, the Skutumpah Road Project is similar to the Burr Trail improvement project, which included providing safe passage for visitors to the Bullfrog Marina.

> [E]ven if the right-of-way were restricted to use for economic development as plaintiffs claim, it would still encompass the proposed changes since the promotion of tourism is a form of economic development. The fact that the nature of the economy has evolved from sheep and cattle-driving to meeting the public's recreational needs does not alter this result. Bullfrog Marina was not built by Garfield County. The county is merely responding to the changing needs of the public by providing for safe travel, as it is obliged to do. Moreover, it is an oversimplification to characterize Garfield County's goal as the promotion of

14

tourism. As noted, the road is a vital link between the county's major centers of activity.

*Hodel*, 675 F. Supp. 608.

Kane County duly consulted with the BLM and the BLM decided the Project is reasonable but not necessary. "A court can find, as did the court in *Hodel*, that certain proposals for improvement are 'reasonable and necessary' in light of the traditional uses of the road, so long as the BLM was consulted in advance." *Kane County (1)*, 772 F.3d at 1224, quoting *Hodel*, 848 F.2d at 1084.

"Utah adheres to the general rule that the owners of the dominant and servient estates 'must exercise [their] rights so as not unreasonably to interfere with the other.'" *Hodel*, 848 F.2d at 1083, citing *Big Cottonwood Tanner Ditch Co. v. Moyle*, 174 P.2d 148, 158 (1946). The BLM had its chance to make a better decision in consultation, it is unreasonably interfering with the State's and County's interests, and the parties have advisedly resorted to the Court. This Court is now able to make the decision of whether the Project is within the scope of the right-of-way.

The Court should find that the Skutumpah Road Project is reasonable and necessary and within the scope of the right-of-way for the Skutumpah Road in light of traditional uses and the exigencies of existing travel. As in *Hodel*, the Court does not have to "decide the precise width of" the right-of-way to approve the Project. *Id*. at 1084. Nevertheless, the evidence establishes that a standard 66-foot right-of-way is reasonable and necessary and will accommodate the project. As noted above, it "is but matter of common understanding and experience that it is desirable and usual that streets and highways should be and are of uniform width." *Burrows*, 12 P. at 851. The south end of the Skutumpah Road Project begins at the intersection with the Johnson Canyon Road, which has a 66-foot-wide Title V right-of-way (*see* Pl. Ex. 295), and it is

15

proper to keep a uniform width in these connected rights-of- way. Additionally, the BLM issued a 66-foot-wide Title V right-of-way for part of the nearby Bald Knoll Road. Pl. Ex. 87. The Bald Knoll Road receives less travel and there is no reason to find a lesser width for the Skutumpah Road.

DATED this 1st day of May, 2023.

HOLLAND & HART LLP

/s/ Shawn Welch
Shawn T. Welch
Richard D. Flint
Michelle Quist

*Attorneys for Kane County, Utah*

UTAH ATTORNEY GENERAL'S OFFICE

/s/ Anthony L. Rampton*
Anthony L. Rampton
Kathy A.F. Davis
Kaitlin Tess Davis
Assistant Attorneys General

*Attorneys for Plaintiff State of Utah*
* Signed with permission given to filing counsel

21397083_v1