Shawn T. Welch (7113)
Richard D. Flint (7525)
Michelle Quist (13559)
HOLLAND & HART LLP
222 South Main, Suite 2200
Salt Lake City, UT 84101
Telephone: 801-799-5800
stwelch@hollandhart.com
rdflint@hollandhart.com
mlquist@hollandhart.com

*Attorneys for Kane County, Utah*

Kathy A.F. Davis (4022)
K. Tess Davis (15831)
Assistant Attorneys General
SEAN D. REYES (7969)
Utah Attorney General
1594 W. North Temple, Ste. 300
Salt Lake City, UT 84116
Telephone: (801) 537-9801
kathydavis@agutah.gov
kaitlindavis@agutah.gov

*Attorneys for the State of Utah*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| KANE COUNTY (1), UTAH a Utah political subdivision,<br><br>    Plaintiff,<br><br>STATE OF UTAH,<br><br>    Plaintiff-Intervenor,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>    Defendant,<br><br>SOUTHERN UTAH WILDERNESS ALLIANCE and THE WILDERNESS SOCIETY,<br><br>    Defendant-Intervenors. | **THE STATE OF UTAH'S AND KANE COUNTY, UTAH'S POST-TRIAL REPLY BRIEF**<br><br>Case No. 2:08-cv-00315-CW<br><br>Judge Clark Waddoups |

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ..................................................................................................................1

1.       The Tenth Circuit will Decide the Proper Burden of Proof. ..............................................3

2.       The Mandate Rule and Law of the Case. .........................................................................4

3.       The United States and SUWA's Scope Arguments have been Rejected by the Tenth Circuit. ....................................................................................................................5

4.       Aerial Imagery does not Define the Scope of an R.S. 2477 Right-of-Way. ....................11

5.       The United States Caused an Enormous Increase in Travel Impacts to The Skutumpah Road But Refuses to take Responsibility or Allow Kane County to Remedy the Problem. ......................................................................................................12

6.       The United States Lacks Authority to Decide what is Reasonable and Necessary. .........13

# **TABLE OF AUTHORITIES**

**Page(s)**

## **CASES**

*Blonquist v. Blonquist*,
    516 P.2d 343 (Utah 1973) .................................................................................................. 5

*Burrows v. Guest*,
    12 P. 847 (Utah 1886) ....................................................................................................... 7

*C-B-K Ranch LLC v. Glenna R. Thomas Tr.*,
    2023 UT App 110, 2023 WL 6154437 (Sept. 21, 2023) ..................................................... 8

*Jeremy v. Bertagnole*,
    116 P.2d 420 (1941) ................................................................................................. 5, 8, 11

*Kane Cnty. v. United States*,
    928 F.3d 877 (10th Cir. 2019) ........................................................................................... 7

*Kane Cnty., Utah (1) v. United States*,
    772 F.3d 1205 (10th Cir. 2014) .................................................................................. passim

*Kane County, Utah v. United States*,
    No. 2:08-cv-00315 CW, 2013 WL 1180764 (D. Utah Mar. 20, 2013) ...................... passim

*Leo M. Bertagnole, Inc. v. Pine Meadow Ranches*,
    639 P.2d 211 (Utah 1981) .................................................................................................. 6

*Lindsay Land & Live Stock Co. v. Churnos*,
    75 Utah 384, 285 P. 646 (1929) ......................................................................................... 6

*S. Utah Wilderness All. v. United States DOI*,
    44 F.4th 1264 (10th Cir. 2022) .......................................................................................... 7

*SRB Inv. Co. v. Spencer*,
    2020 UT 23, 463 P.3d 654 ............................................................................................ 8, 11

*Sullivan v. Condas*,
    76 Utah 585, 290 P. 954 (1930) ......................................................................................... 6

*SUWA v. BLM*,
    425 F.3d 735 (10th Cir. 2005) .................................................................................... passim

*Whitesides v. Green*,
    44 P. 1032 (1896) .................................................................................................................. 6

## **RULES AND STATUTES**

Utah Code § 17-27a-609.5 ........................................................................................................ 10

Utah Code § 72-3-108 ............................................................................................................... 10

Utah Code § 72-5-305 ............................................................................................................... 10

Plaintiff Kane County, Utah ("County") and Plaintiff-Intervenor the State of Utah ("State") submit this Post-Trial Reply Brief. The State and County herein respond to the United States' Post-Trial Brief, ECF 414 ("US Br."), and Defendant-Intervenors' Post-Trial Brief, ECF 421 ("SUWA Br."). Where indicated, the State and County will cite to their Post-Trial Brief, ECF 409 ("Plf. Br."), and their Joint Proposed Findings of Fact and Conclusions of Law, ECF 408 ("Plf. FOF").

## INTRODUCTION

The Tenth Circuit Court of Appeals remanded this matter for the Court to determine the scope of the rights-of-way for the K5000 Skutumpah, K4360 Swallow Park, and K4370 North Swag roads. In remanding, the Tenth Circuit held that the Court erred in setting the right-of-way width without discussing the traditional uses of the road and setting the width to accommodate unknown future improvements. "[W]e find the district court erred in allowing for unspecified improvements in setting the widths of the rights-of-way on Skutumpah, Swallow Park and North Swag roads. Therefore, we remand the question of the scope of the R.S. 2477 rights-of-way on these roads." *Kane Cnty., Utah (1) v. United States*, 772 F.3d 1205, 1225 (10th Cir. 2014) ("*Kane County (1)*").

Thus, the issue remanded was very specific and limited: determine the scope of the three roads in light of the traditional uses to which the rights-of-way were put. *Id*. at 1223. The Swallow Park/Park Wash and North Swag roads are unimproved, single-lane roads. The Skutumpah Road is a two lane, graveled surface road that receives substantial travel. In fact, current circumstances caused the County to request the Court to determine the scope of the south end of the Skutumpah Road as including the Skutumpah Road Project. Plf. Br. 13-16. "Courts

1

look to state law to determine the appropriate width, and under Utah law, the width of a public road is that which is reasonable and necessary under all the facts and circumstances." *Kane County (1)*, 772 F.3d at 1223 (citations and quotation marks omitted). "Thus, the road can be widened to meet the exigencies of increased travel, including where necessary to ensure safety." *Id.* (citations and quotation marks omitted).

The United States and SUWA, on the other hand, seek to have the Court relitigate title, including culvert by culvert. "[T]he question before the Court is whether Plaintiffs have rights to the current alignment, or whether that alignment is merely permissive." US Br. 10. "Simply put, a court cannot find in the first instance that any change or improvement to the condition of the right-of-way that has occurred or will occur after October 21, 1976 is part of the R.S. 2477's scope until and unless the holder and the appropriate federal land manager engage in consultation." SUWA Br. 19.

The Tenth Circuit remanded for the Court to determine the scope of three rights-of-way. It did not instruct the Court to relitigate title as of 1976, nor did it suggest that the State and County must consult with the United States over past improvements.

On remand, neither the United States nor SUWA introduced any significant evidence. Rather, the United States simply tasked a different expert to estimate "disturbed width" measurements from aerial imagery previously considered by the Court. A thousand estimated measurements from two sets of aerials do not make for better evidence. The United States simply proffers its selective interpretation of the disturbed area—the beaten path—to try to create a "baseline" from which the State and County must relitigate title and engage in rounds of consultation. The United States and SUWA are wrong, as the Skutumpah Road Project is the

2

only improvement to be made and the County consulted with the United States regarding this project. An unknown official in Washington D.C. instructed Mr. Harry Barber, BLM's Paria District Manager, to find that the Skutumpah Road Project is not necessary, thus ending consultation. Accordingly, the Skutumpah Road Project is properly before the Court to decide whether it is reasonable and necessary under all of the facts and circumstances and therefore within the scope of the Plaintiffs' previously determined title to the right-of-way for the Skutumpah Road.

**1.       The Tenth Circuit will Decide the Proper Burden of Proof.**

The State and County recognize that this Court held the proper burden of proof is by clear and convincing evidence. *Kane County, Utah v. United States*, No. 2:08-cv-00315 CW, 2013 WL 1180764, *43-45 (D. Utah Mar. 20, 2013) ("*Kane County Merits*"). On appeal, the Tenth Circuit chose not to resolve "the appropriate standard of proof." *Kane County (1)*, 772 F.3d at 1222. At some point, the Tenth Circuit will decide the question of the proper burden of proof and the safer course may be for the Court to require proof by clear and convincing evidence.

Nevertheless, the State and County contend that even if proof of acceptance of an R.S. 2477 right-of-way is by clear and convincing evidence, that does not necessarily require clear and convincing evidence that a proposed improvement project is reasonable and necessary. "There is some support in case law that when determining the scope of a right-of-way the burden of proof is by preponderance of the evidence." *Kane County Merits,* 2013 WL 1180764, *62, n.31.

3

Here, the State and County have, by clear and convincing evidence, confirmed both their title to the right-of-way and the fact that the Skutumpah Road Project is reasonable and necessary in light of pre-1976 uses of the Skutumpah Road as well as current circumstances.

**2.      The Mandate Rule and Law of the Case.**

SUWA contends that the mandate rule somehow prohibits the Court from considering directly relevant evidence relating to scope. SUWA Br. 2. "The mandate rule is a corollary to the law of the case doctrine intended to prevent relitigation of issues already decided." *Id*. SUWA then argues that the Court must require the County to first seek an administrative determination of whether each culvert is reasonable and necessary, and then relitigate title to the right-of-way and improvement. *See* SUWA Br. 17-19.

Title to the Skutumpah Road, including its realignments and features, are vested in the State and County. *Kane County Merits,* 2013 WL 1180764, \*\*60-62. The United States did not appeal the existence of bridges, culverts, and drainage runouts. Rather, it appealed the numerical width of three rights-of-way because the Court did not discuss pre-1976 uses and allowed, in advance, "room for unspecified future improvements." *Kane County (1)*, 772 F.3d at 1223.

The Tenth Circuit remanded "the question of scope of the R.S. 2477 rights-of-way" for three roads. The issue of title was affirmed and not remanded. Resolution of the question of scope requires the Court to decide what is "reasonable and necessary under all the facts and circumstances." *Kane County (1)*, 772 F.3d at 1223 (citation omitted). This analysis involves pre-1976 uses, along with changes that are reasonable and necessary to meet the exigencies of increased travel. *SUWA v. BLM*, 425 F.3d 735, 746 (10th Cir. 2005). The Tenth Circuit clearly

4

authorized the Court to consider all of the facts and law applicable to the question of scope. Moreover, the Tenth Circuit did not remand for the Court to litigate past improvements.

**3. The United States and SUWA's Scope Arguments have been Rejected by the Tenth Circuit.**

No improvements have been made to the Swallow Park/Park Wash and North Swag roads subject to the remand, and the north section of the Skutumpah Road will remain as it has been since before 1996.[1]

> Courts look to state law to determine the appropriate width, and under Utah law, the width of a public road is that which is 'reasonable and necessary under all the facts and circumstances.' Thus, the road can be 'widened to meet the exigencies of increased travel,' including where necessary to ensure safety.

*Kane County (1)*, 772 F.3d at 1223 (cleaned up).

The State and County seek an 18-foot right-of-way for the Swallow Park/Park Wash and North Swag roads. Plf. Br. 10. This is essentially the narrowest width that will allow motor vehicle travel so that oncoming vehicles can get past each other. Indeed, the Utah Supreme Court has previously held that a 30-foot right-of-way is modest.

> Even without considering access to subdivisions—a use to which the road was put for less than the 10-year statutory period—30 feet cannot be said to be unreasonably wide or unsupported by the evidence. The evidence of the use of the road by large flocks of sheep, sheep camps, trucks, jeeps, heavy equipment, hunters, fishermen, picnickers, campers, and sightseers supports the finding of a 30-foot width. Furthermore, the district judge determined the width of the public highway after a personal on-site inspection of the property, a fact adding weight to his finding. A 30-foot roadway is modest in comparison to those found by this Court in previous cases involving roads in mountain canyons. *Blonquist v. Blonquist*, [516 P.2d 343, 343 (Utah 1973)] (**44 feet**); *Jeremy v. Bertagnole*, [116 P.2d 420, 424 (1941)] (**60 feet in part, 82.5 feet for the remaining portion**);

---

[1] In 1996 the United States sued the County for realigning several northern sections of the Skutumpah Road. Title to the realignments is vested in the State and County. *Kane County Merits*, 2013 WL 1180764, *43-45.

5

> *Sullivan v. Condas*, 76 Utah 585, 290 P. 954 (1930) (**49.5 feet**); *Lindsay Land & Live Stock Co. v. Churnos*, 75 Utah 384, 285 P. 646 (1929) (**100 feet**).

*Leo M. Bertagnole, Inc. v. Pine Meadow Ranches*, 639 P.2d 211, 213-14 (Utah 1981) (emphasis added).

Here, the State and County have shown that the right-of-way for the Swallow Park/Park Wash and North Swag roads should be confirmed to be 18 feet wide. Under Utah law, public highways must be "wide enough to allow travelers to pass each other." *Whitesides v. Green*, 44 P. 1032, 1033 (1896). The Swallow Park/Park Wash and North Swag roads are single lane roads, with a 10- to 12-foot traveling surface. The County's road grader is eight and one-half feet wide and common trucks are approximately seven feet wide. The American Association of State Highway and Transportation Officials (AASHTO) minimum right-of-way width for a low volume, rural road, is 18 feet. Plf. FOF 47, ¶ 209. Accordingly, the Court should find an 18-foot right-of-way for the Swallow Park/Park Wash and North Swag roads is reasonable and necessary in light of the pre-1976 traditional uses of the roads by tractors, trucks, and motor vehicles. Plf. FOF 11-20.

The roughly 34 miles of the Skutumpah Road, north of the project area discussed below, involve a graveled and graded, higher-speed two lane road. *Id.* at 11. Kane County's former road supervisor Vane Campbell testified that he maintained Skutumpah Road to about 20 feet of travel surface before 1976. *Bald Knoll Merits*, 2013 WL 1180764, *12. This width was not always consistent due to the topography but was the general pre-1976 practice. Mr. Louis Pratt testified that the Skutumpah Road was later widened to about a 28-foot travel surface. *Id.*

"The 'scope' of a right-of-way is a question of state law, and under Utah law a right-of-way may be expanded beyond the beaten path where 'reasonable and necessary' to safely

6

accommodate the pre-1976 use." *Kane Cnty. v. United States*, 928 F.3d 877, 884 (10th Cir. 2019). The State and County seek a 50-foot right-of-way for this northern section, which will be equal to the rights-of-way for the connecting Mill Creek and Bald Knoll roads. "It is but matter of common understanding and experience that it is desirable and usual that streets and highways should be and are of uniform width." *Burrows v. Guest*, 12 P. 847, 851 (Utah 1886).

The United States did not challenge the 50-foot right-of-way for the Mill Creek and Bald Knoll roads, nor did it argue that the State and County must go back across the years to prove that each improvement was reasonable and necessary. Plf. Br. 12-13. *SUWA v. BLM* was issued in 2005 and the original trial in this matter occurred years later in 2011. The United States did not raise any arguments about prior improvements to the roads and, at a minimum, it should be held to have waived the argument.

> Moreover, these realignments [and improvements] occurred prior to the Tenth Circuit's decision in SUWA. This is significant because the decision clarified the parties' rights and interests in R.S. 2477 roads. Previously, it was unclear what actions required notice and what role the BLM could play when improvements were sought within the scope of an existing right-of-way.

*Kane County Merits*, 2013 WL 1180764, *43-45.

"In 2005, in *SUWA v. BLM*, we *announced* guiding principles relevant to this appeal." *S. Utah Wilderness All. v. United States DOI*, 44 F.4th 1264, 1268 (10th Cir. 2022) (emphasis added). Those legal principles govern the parties' interactions going forward.

The Court should find that the Skutumpah Road Project is reasonable and necessary in light of traditional uses, the exigencies of increased travel, and to promote public safety. "[A] right-of-way may be expanded beyond the beaten path where 'reasonable and necessary' to safely accommodate the pre-1976 use." *Kane Cnty.*, 928 F.3d at 884. "A bridle path abandoned

7

to the public may not be expanded, by court decree, into a boulevard. On the other hand, the implied dedication of a roadway to automobile traffic is the dedication of a roadway of sufficient width for safe and convenient use thereof by such traffic." *Jeremy v. Bertagnole*, 16 P.2d 420, 424 (1941).

This Court "should begin with the presumption that technological advances are favored and not assign an increased burden to the servient estate from the mere fact that some learning and adjustment are necessitated any time new technology is employed." *C-B-K Ranch LLC v. Glenna R. Thomas Tr.*, 2023 UT App 110, ¶ 27; 2023 WL 6154437 (Sept. 21, 2023). "Accordingly, 'in determining the scope of a prescriptive right, courts should take a flexible approach that permits changes of use so long as those changes do not materially burden the servient estate or materially interfere with the prescriptive right.'" *Id*. ¶ 28, quoting *SRB Inv. Co. v. Spencer*, 2020 UT 23, ¶ 38, 463 P.3d 654.

The evidence adduced at trial confirmed that traffic on the south end of the Skutumpah Road has increased several fold since the creation of the Grand Staircase-Escalante National Monument ("Monument"). Plf. FOF 26-40. Sheriff Glover confirmed that these increases are attributable to "recreational uses and camping, residential use for the Deer Spring Ranch, and commercial uses related to the gravel and shale pits that the haul trucks use." Plf. FOF 30, ¶ 122. This increased travel has caused public safety hazards on the south end of the Skutumpah Road. *Id*. at 31, ¶ 123. Accordingly, the Court should find the Skutumpah Road Project is reasonable and necessary in light of pre-1976 uses, and will "meet the exigencies of increased travel, including where necessary to ensure safety." *Kane County (1)*, 772 F.3d at 1223 (cleaned up).

SUWA's argument that the United States must conduct nonbinding administrative determinations of scope is meritless. As the Court is aware, the United States refuses to conduct administrative determinations and there is no legal mechanism to compel the United States to do so. Moreover, the United States already conducted an administrative determination for the Skutumpah Road[2], but that meant nothing to the United States and the State and County had to file this lawsuit to confirm their title.

The United States and SUWA attempt to argue that certain improvements may have been "permissive" uses such that they that are not part of the right-of-way. US Br. 8. This argument conflates uses of the road for purposes of *acceptance* of an R.S. 2477 right-of-way as a public highway, with the scope of an established right-of-way. This Court has already properly rejected these arguments. *Kane County Merits*, 2013 WL 1180764, **43-49. Moreover, the United States did not raise these issues on appeal and has therefore waived them for purposes of determining scope on remand.

Post-1976 improvements to the road either must have a FLPMA Title V permit, the only "permission" possible, or they are something to which the landowner United States did not object as being within the scope of an existing R.S. 2477 right-of-way. In 1994, Secretary Babbitt changed that baseline concept by proposing regulations to give the United States the right to decide State and County ownership, and then sued the County in trespass to have a court decide that the United States had the right to determine State and County R.S. 2477 ownership. Congress resoundingly rejected the United States' effort to be able to decide the "use,

---

[2] *See SUWA*, 425 F.3d at 788 (remanding for district court to make scope decision on the Skutumpah Road following administrative determination).

management and validity" of State and County R.S. 2477 rights-of-way in 1996 (*see* Plf. Br. 9-10), and even more directly the Tenth Circuit held that R.S. 2477 has "no executive role for the BLM to play." *SUWA*, 425 F.3d at 754. "In light of the fact that FLPMA explicitly preserved and protected R.S. 2477 rights of way in existence as of October 21, 1976, and that those rights *have the status of vested real property rights*, any post-1976 changes in agency interpretation of the repealed statute have questionable applicability." *SUWA*, 425 F.3d at 760 (emphasis added).

SUWA is equally misguided in arguing that "[p]roperly understood, 'traditional uses' refers to the purposes for which the right-of-way was accepted, or, in other words, the public uses of the route that have not lapsed or been abandoned." SUWA Br. 10. SUWA fails to cite any law for the assertion that a public highway right-of-way can lapse or be abandoned.

Neither the State nor County can abandon or surrender a public highway right-of-way absent formal action. *See* Utah Code § 72-5-305 (R.S. 2477 right-of-way not abandoned or waived by passage of time or frequency of use); Utah Code § 72-3-108 (ordinance is required to vacate county road); Utah Code § 17-27a-609.5 (ordinance to vacate public street).

SUWA is equally wrong in arguing that a highway user's "subjective" purpose for traveling a road prior to 1976 somehow thereafter limits the highway to pre-1976 "subjective" uses. If this were the law, then the Monument visitors, whose increase in numbers were recently caused by the United States, should not be using the road, nor should SUWA's members who currently travel the roads to visit the Monument or wilderness areas in Kane County. Prior to 1976, there was no such use of the roads, but according to SUWA, the roads are "limited to the original use for which it was acquired." SUWA Br. 15, citing *SUWA*, 425 F.3d at 746. R.S. 2477 rights-of-way were granted to provide for public motor vehicle travel and the "dedication of a

roadway to automobile traffic is the dedication of a roadway of sufficient width for safe and convenient use thereof by such traffic." *Jeremy*, 16 P.2d 420, 424 (1941). The subjective purpose of the traveler is not particularly relevant. *See generally SRB Inv. Co.*, 2020 UT 23.

**4.  Aerial Imagery does not Define the Scope of an R.S. 2477 Right-of-Way.**

The United States essentially relies on aerial imagery as defining the State and County's rights-of-way. While useful in some respects, aerials are inconsistent, subjective in interpretation, and lack historical sweep. Plf. FOF 39-40. Aerials provide a piece of snapshot evidence, not the basis to determine the width of a right-of-way.

"The width of the road, however, is not limited to the actual beaten path as of October 21, 1976." *Kane Cnty. (1)*, 772 F.3d at 1223 (citation omitted). The United States, however, merely tasked Mr. Jake Slyder to subjectively measure what he believed was the width of the disturbance in 1974 and 2018 aerial imagery. The disturbed width is only part of the analysis and the limits in using aerial imagery have been thoroughly vetted by this Court in two trials.

Moreover, the United States' reliance on pre-1976 aerials is inconsistent. As stated by the United States, the 1974 aerial photographs for "the south end of the Skutumpah road [range] from 16.6 to 36.4 feet (travel surface), and from 16.6 to 71.5 feet (total disturbance), *see* D532R, and at the north end of the road from 9.9 to 49.6 feet (travel surface) and from 11.6 to 100.7 feet (total disturbance), *see* D537R." US Br. 20. Thus, the pre-1976 aerials support a finding of a much wider right-of-way for the Skutumpah Road than has been requested—including 71.5 feet of total disturbance at the south end for the Skutumpah Road Project.

**5.     The United States Caused an Enormous Increase in Travel Impacts to The Skutumpah Road But Refuses to take Responsibility or Allow Kane County to Remedy the Problem.**

There is no dispute that increased traffic is damaging the Skutumpah Road and causing washboards and fugitive dust. Moreover, after the BLM closed some of the community gravel pits in the Monument and with other gravel pits depleting, there is increased use by gravel and stone haul trucks on the south end of the Skutumpah Road. This increased use damages the road and results in fugitive dust. The County cannot afford the continuous maintenance costs on less than three miles of road. The County stands ready to place pavement on the south end of the road as soon as possible, which will remedy the problem and reduce damage to the underlying federal lands.

Neither the United States nor SUWA provided a solution for the recognized traffic problems and what is most egregious is that while the United States has itself caused much of the increased use, it does not have to pay for the damage it has caused. SUWA, on the other hand, seems to want vehicular limits imposed on the road but fails to suggest who would regulate any such restriction and which members of the public should be restricted.

The Tenth Circuit remanded for this Court to determine the scope of the existing R.S. 2477 right-of-way for the Skutumpah Road and the County consulted with the BLM regarding the Skutumpah Road Project. The BLM determined that the project was reasonable but not necessary. The scope determination is to be made by this Court and should be sufficient to "meet the exigencies of increased travel, including where necessary to ensure safety." *Kane County (1)*,

772 F.3d at 1223 (cleaned up). The Skutumpah Road Project is reasonable and necessary and should be confirmed by this Court.

**6.      The United States Lacks Authority to Decide what is Reasonable and Necessary.**

The State and County recognize the need to consult with the BLM regarding any proposed improvements to an R.S. 2477 road. In this context, consultation is simply two landowners discussing a project and deciding what to do. "Utah adheres to the general rule that the owners of the dominant and servient estates 'must exercise [their] rights so as not unreasonably to interfere with the other.'" *SUWA*, 425 F.3d 735, 746 (10th Cir. 2005) (citation omitted). If the United States agrees with the project, including negotiated modifications, there will be no case or controversy for a court to resolve. "In the event of disagreement, the parties may resort to the courts." *Id*. at 748. Here, there was a disagreement and the parties resorted to the Court.

The United States and SUWA, however, would like to create a multi-step, multi-decisional administrative consultation process that serves no purpose other than delay. The Court should recall that this lawsuit started when the BLM spent over two years considering the County's proposal to upgrade the Bald Knoll and Mill Creek roads. When the BLM refused to make an administrative determination, the County filed suit. In the meantime, the roads fell into disrepair. *See generally* Kane County's Memorandum in Opposition to the United States of America's Renewed Motion for Partial Dismissal, ECF 84.

As shown at trial, there is a public safety and maintenance problem on the south end of the Skutumpah Road. Following the Tenth Circuit's guidance, the County consulted with the United States and attended site visits with BLM personnel to review the Skutumpah Road

13

Project. In the end, some unnamed official in Washington, D.C., instructed Mr. Barber to find that the project was reasonable but not necessary. Plf. FOF 37-39, 51-55.

The United States had the opportunity to review and consult about the Skutumpah Road Project. Nevertheless, it is for the Court to decide whether a proposed improvement is reasonable and necessary in light of traditional uses and the exigencies of increased travel. The State and County established that the Skutumpah Road Project is reasonable and necessary according to established legal principles and the Court should uphold the project.

DATED this 25th day of October 2023.

        HOLLAND & HART LLP

        */s/ Shawn Welch*
        Shawn T. Welch
        Richard D. Flint
        Michelle Quist

        *Attorneys for Kane County, Utah*


        UTAH ATTORNEY GENERAL'S OFFICE

        */s/ Kathy A.F. Davis\**
        Kathy A.F. Davis
        Kaitlin Tess Davis

        *Attorneys for Plaintiff State of Utah*
        * Signed with permission given to filing counsel

30637971_v1