ADAM R. F. GUSTAFSON, Principal Deputy Assistant Attorney General
JOSEPH H. KIM, Trial Attorney
Natural Resources Section
Energy & Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
(202) 305-0207

*Attorneys for Defendant United States of America*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF UTAH**

| | |
|---|---|
| KANE COUNTY (1), UTAH a Utah political subdivision,<br><br>Plaintiff,<br><br>STATE OF UTAH,<br><br>Plaintiff-Intervenor,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant,<br><br>SOUTHERN UTAH WILDERNESS ALLIANCE and THE WILDERNESS SOCIETY,<br><br>Defendant-Intervenors. | **UNITED STATES' SUGGESTED CORRECTIONS TO THE TENTATIVE DECISION**<br><br>Case No. 2:08-cv-00315 CW<br><br>Judge Clark Waddoups |

Pursuant to this Court's Order dated November 4, 2026 (Dkt. No. 446), the United States submits these "suggested corrections" to the Court's sealed Tentative Decision (Dkt. No. 441).

## I. The Tentative Decision Need Not Issue Due to Mootness

In December 2022, this Court held a remand trial in this case. One of the issues at that remand trial was whether Kane County may proceed with a proposed improvement to the Skutumpah Road involving partial pavement and realignments. On February 20, 2026, this Court issued an order allowing this improvement. Dkt. No. 439. Following that order, and before this Court issued the "Tentative Decision" on October 15, 2026 [Dkt. No. 441], Kane County completed the proposed road work.

Under these circumstances, the dispute over the proposed improvement now appears to be moot because there is no longer any controversy over whether this proposed alignment should be completed. Because the road work at issue has been completed, there is no further relief, with respect to the proposed improvement, that this Court can grant.

The issue of the proper scope for Skutumpah Road remains and is set for closing argument on December 8, 2026. *See* Dkt. Nos. 444, 447. Legal issues addressed in the Tentative Decision may also be relevant to the overall remand trial and, for this reason, are discussed below. But, because the Tentative "[D]ecision pertains only to resolution of the Proposed Project issue," Dkt. No. 441 at 2, and because the project is already completed, the dispute over the proposed improvement appears to be moot. As such, there is no need to finalize the Tentative Decision, and this Court should instead proceed to closing argument and a final decision on remand.

## II. Suggested Corrections

To the extent that the Court nonetheless intends to finalize the Tentative Decision, or to the extent the Court may find it helpful to have the upcoming oral closing argument

supplemented by written briefing, the United States offers these suggested corrections to the Tentative Decision.

**A. Standard of Review**

The United States agrees that *SUWA v. BLM*, 425 F.3d 735 (10th Cir. 2005), provides binding authority regarding improvements of R.S. 2477 rights-of-way. The United States also agrees that BLM's determinations on consultation for a proposed improvement are non-binding under *SUWA v. BLM*. *See* Tentative Decision at 51. The United States further agrees that, "[i]n the event of disagreement, the parties may resort to the courts" to resolve scope. *Id*. (quoting *SUWA v. BLM*).

The United States also agrees that the Tenth Circuit has stated that there is a "precise order of actions" when the parties engage in consultation. Tentative Decision at 51 (quoting *SUWA v. BLM*). However, the United States does not argue "that the procedure elevated the BLM's determinations to a deferential standard of review." *Id*. at 52. Indeed, the United States agrees that scope is part of title, and thus governed by the Quiet Title Act, and in that sense this Court's review is *de novo*. The United States has simply argued that the requirement for an "order of actions" has practical consequences: "In particular, this means that this Court will effectively be limited to reviewing evidence that had previously been before BLM as part of the consultation. Otherwise, this 'precise order of actions' cannot hold." US Post-Trial Brief at 12 (Dkt. No. 414 at 15). In addition to following from the Tenth Circuit's ruling regarding the "precise order of actions," this limitation on evidence promotes judicial efficiency. As both the Tenth Circuit and this Court note, "[i]f the parties cannot agree, the consultation process affords the BLM an opportunity 'to determine its own position in the litigation'." Tentative Decision at

53 (quoting from and citing to *SUWA v. BLM*, 425 F.3d at 750, 758). But BLM will not have "an opportunity to determine its own position in the litigation," *id*., unless it has had an opportunity to consider all the evidence the holder is relying on to justify the necessity of the proposed improvement.

Accordingly, the United States suggests that the Court correct the Tentative Decision by removing references to "deference" and removing statements suggesting that "the parties may submit evidence beyond what was presented during the consultation process." *E.g*., Tentative Decision at 53, 54.

**B. Use**

The United States agrees that the Tenth Circuit, in *San Juan County v. United States*, 754 F.3d 787 (10th Cir. 2014), "held use of a road by cattle ranchers was not use by the public because they operated pursuant to a grazing permit." Tentative Decision at 56 (citing *San Juan*, 754 F.3d at 800). Indeed, the Tenth Circuit in both *SUWA v. BLM* and *San Juan* discuss Utah state court decisions, as well as other state court decisions, and effectively conclude that permissive or permitted uses are not relevant for establishing rights under R.S. 2477. The United States also agrees that many of these cited cases are cases involving circumstances "when one seeks to gain adverse possession against a private landowner." *Id*. at 58. And the United States agrees that the adverse possession "circumstance does not apply in an R.S. 2477 context." *Id*. This necessarily means that what the Tenth Circuit borrowed from these cases was limited to an understanding of what kinds of uses are relevant for establishing rights under R.S. 2477 without any reliance on aspects of those cases related to "adverse possession."

The United States further agrees that "all use of federal land for the establishment of an R.S. 2477 road was done by permission of the United States" and, "[i]n that s[e]n[s]e, everyone was a permissive user." Tentative Decision at 58. But the United States' position is not based on the uses authorized by R.S. 2477 itself. Rather, the United States' position is limited to what the Tenth Circuit borrowed from state law -- that other permissive or permitted uses (such as grazing or general recreation) are not relevant for establishing rights under R.S. 2477.

In this regard, the United States agrees that when there are a variety of uses, there can then be relevant uses that establish rights under R.S. 2477. Tentative Decision at 57 (discussing *Lindsay Land*); *id*. at 59 (discussing *Thurman*). In other words, that there are some uses that do not themselves help establish rights under R.S. 2477 will not negate other uses that are relevant for establishing rights under R.S. 2477.

Accordingly, the United States suggests that the Court correct the Tentative Decision to clarify this discussion of "use."

**C. Scope of 66' width ("at least")**

The United States agrees that "[w]hen determining scope, however, the focus is on the physical boundaries that were acquired under the grant." Tentative Decision at 68 (citing *Sierra Club v. Hodel*, 848 F.2d 1068, 1079 n.9 (10th Cir. 1988)). The focus on physical boundaries means that the grant was acquired by construction or use, and the actual construction or use before 1976 will establish the physical boundaries. Any preferences established by, for example, state law, or actions taken by a County Board of Commissioners, may be relevant, *see* Tentative Decision at 65, but only to the extent that they may help establish or explain the breadth of actual construction before 1976.

The United States understands the limitations of aerial photography and its analysis, *see* Tentative Decision at 67-68, but that was the best evidence of the physical boundaries presented on remand. The United States also agrees that precise measurements of the physical boundaries are time consuming, and that a scope based on the precise measurements of the physical boundaries may be, as a practical matter, "unworkable" for the road crews. *Id*. at 68-69. For this reason, the United States has advocated, in appropriate circumstances, to define scope in qualitative terms rather than quantitative ones. But there is no basis for adopting a uniform scope simply as a matter of convenience.

Accordingly, the United States suggests that the Court correct the Tentative Decision to clarify this discussion of scope.

**D. The "reasonable and necessary" standard**

The United States disagrees to the extent that the Court is interpreting this standard set by the Tenth Circuit to mean a "safety and convenience" standard. *See* Tentative Decision at 73. Nor is "enjoyment" sufficient under the Tenth Circuit's "reasonable and necessary" standard. *See id*. at 71. Such an interpretation would give little or no meaning to the "reasonable and necessary" standard set by the Tenth Circuit. Virtually every proposed improvement could enhance safety, convenience, or enjoyment. Indeed, it is hard to imagine any proposed improvement that would not. While enhancing safety, convenience, or enjoyment may make a proposed improvement reasonable, something more is required for the "necessary" portion of this requirement.

Accordingly, the United States suggests that the Court correct the Tentative Decision to clarify this discussion of the "reasonable and necessary" standard.

Respectfully submitted this 19th day of November, 2026.

ADAM R. F. GUSTAFSON
Principal Deputy Assistant Attorney General

*/s/ Joseph H. Kim*
JOSEPH H. KIM, Trial Attorney
Natural Resources Section
Energy & Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
(202) 353-1389
joseph.kim@usdoj.gov

*Attorneys for Defendant United States of America*